HORATIO O. STONE, Appellant, *v.* JEREMIAH H. PRATT, impleaded with Amos Pratt, Appellee.

APPEAL FROM THE SUPERIOR COURT OF CHICAGO.

Equity will not, save in exceptional cases where it is necessary to protect an innocent purchaser against fraud, divide and enforce a contract in parcels.

A bill to enforce the specific performance of an agreement by one who at law has not claims in his own name which he can enforce, is always left to the discretion of the chancellor.

A complainant in chancery must not ask a favor beyond his technical legal rights; if he rests his claim upon a hard, oppressive, technical advantage.

The bill in this cause was filed in the court below by the appellant against the appellees, and states, in substance, that in December, 1849, one Calvin D'Wolf became the owner in fee

of the north fifteen acres of the west half of south-west quarter of section 34, township 39 north, range 14 east, in the county of Cook and State of Illinois, and that by subsequent sales and conveyances, duly executed, acknowledged, delivered and recorded, Amos Pratt, in May, 1852, acquired the title and ownership to said land.

That afterwards, and on the 28th day of September, 1852, Amos Pratt, being the owner of said fifteen acres of land, made an agreement in writing with one Clement H. D'Wolf, by which said Amos Pratt, in consideration of $4,050, to be paid by said D'Wolf, agreed to convey said fifteen acres, among other lands, to said D'Wolf; and that said agreement was duly acknowledged by the parties to it, and recorded in the recorder's office of Cook county on the same day.

The agreement is set out at length in the bill, and is in the usual form of agreements for the sale of lands; and after stating the agreement of Pratt (party of the first part), to sell the land to D'Wolf (party of the second part), proceeds as follows:

" And the said party of the second part, in consideration of the premises, hereby agrees to pay to the said party of the first part, his or their executors, administrators or *assigns*, the sum of four thousand and fifty dollars, at Chicago, as follows, viz.: One hundred, cash in hand; six hundred dollars in one year; six hundred and seventy dollars in two years; six hundred and seventy dollars in three years; six hundred and seventy dollars in four years; six hundred and seventy dollars in five years; and six hundred and seventy dollars in six years—from the date hereof; and also, he will well and faithfully, and in due season pay, or cause to be paid, all taxes and assessments, ordinary or extraordinary, for any purpose whatever, upon the said premises or appurtenances.

" And the said party of the first part further covenants and agrees with the said party of the second part, that upon the faithful performance by the said party of the second part, of his undertakings, in this behalf, and of the payment of principal and interest of the sums above mentioned, in the manner specified, he, the said party of the first part, shall and will, without delay, well and faithfully execute and deliver in person, or by attorney, duly authorized, a good and sufficient quit claim deed or deeds, and thereby assign and convey to the said party of the second part, his heirs and assigns, the above described premises, with the appurtenances, with covenant of warranty, as to the acts of Pratt only."

Then follows a provision for forfeiture of agreement at the election of Pratt, in case of default in payment of the purchase price, and for treating D'Wolf as tenant, in case of forfeiture.

The bill then states, that on the 23rd day of September, 1853, Amos Pratt made an agreement in writing with one Warren Parker, to purchase of said Parker certain lands in said agreement described, for the sum of $8,000, payable as follows, to wit. ; $2,666.66 October 10, 1853—$2,666.66 on the 23rd of September, 1854, and $2,666.66 on the 23rd of September, 1855, which said sums said Pratt agreed to pay as aforesaid, and upon the payment of said sums, said Parker was to convey the land in said agreement described to said Pratt. That said agreement was executed in duplicate, and for the purpose of securing the payment of the first of said installments, due October 10, 1853, said Pratt, at the time of making said agreement with Parker, indorsed upon his agreement with Clement H. D'Wolf, aforesaid, a transfer and assignment thereof as follows :

"For value received, I, Amos Pratt, do hereby assign, transfer and deliver unto Warren Parker, his heirs and assigns forever, all my right, title, interest and claim in and to the within contract, and the moneys due or to come due thereon. Also, all my right, title and interest in and to the lands and tenements in said contract described, I do hereby grant and convey unto the said Warren Parker, his heirs and assigns for ever, subject to the covenants in said contract expressed.

Witness my hand and seal this 23rd day of September, 1853.
(Signed)                                                    AMOS PRATT. [SEAL.]

That said assignment was then and there duly acknowledged before a notary public, and, together with said agreement, duly recorded on the 11th day of October, 1853.

That the agreements between said Pratt and Parker, and the agreement between said Pratt and Clement H. D'Wolf, and the assignment thereon by Pratt to Parker, as aforesaid, were, on the said 23rd day of September, 1853, deposited with Messrs. Brown & Hurd, of Chicago, in accordance with an agreement in writing then and there made and entered into between said Pratt and said Parker as follows :

That the said Brown & Hurd should keep possession of the said papers until October 10, 1853, and in case the said Pratt paid to said Parker on that day, the sum of $2,666.66, being the first payment to be made by said Pratt to said Parker, upon the contract of September 23rd, 1853, and interest thereon, then said Brown & Hurd should deliver one of said duplicate agreements and the contract between said Pratt and Clement H. D'Wolf, with the transfer thereon, to said Pratt. But if said Pratt should make default in the payment of the said sum of money, then said Brown & Hurd should deliver all of said papers to said Parker, who should thereupon have the right to sell at public sale, the agreement between said Pratt and said Clement H. D'Wolf, and to pay to himself, the said Parker,

$1,000, as liquidated damages for the default of said Pratt in not performing his covenants contained in his agreement with said Parker.

That said Pratt did not pay said Parker the said $2,666.66 according to his agreement with said Parker, and that thereupon said Brown & Hurd delivered to said Parker the said duplicate agreements between Pratt and Parker, and the agreement between Pratt and D'Wolf, with the assignment thereon to Parker in pursuance of the terms of the agreement under which said papers were placed under the care of said Brown & Hurd.

That after due notice by publication in a public newspaper, printed in Chicago, said Parker, on the 28th day of January, 1854, offered said agreement at public sale, to the highest bidder for cash, at the time and place mentioned in said notice; at which sale complainant became the purchaser of said agreement for the sum of $1,000, being the highest and best bidder, and complainant paid said $1,000 to said Parker.

That Parker thereupon made, executed, acknowledged and delivered to complainant a deed of said agreement, and the lands therein described, reciting all the facts above stated, and the payment of $1,000, which said deed was duly recorded. And complainant insists that by means of the premises, he became the absolute owner of all Pratt's right, title and interest in and to the said agreement, and the lands therein described, with full power to enforce all the covenants and conditions of said agreement against said Clement H. D'Wolf, and that said Pratt, if he had any interest in said premises, held only a naked legal title as trustee for complainant, and to be disposed of as said complainant should direct.

The bill further states, that on the 15th day of January, 1853, the complainant purchased of said Clement H. D'Wolf, the said north fifteen acres of the west half of south-west quarter section 34, township 39 north, range 14 east, aforesaid, for $4,225, to be paid as follows: $275, cash; $600, September 28, 1853; $670, September 28, 1854; $670, September 28, 1855; $670, September 28, 1856; $670, September 28, 1857, and $670, September 28, 1858. And it was further provided in the agreement of purchase, that complainant might, if he chose to do so, make all of the said payments, except the first of $275, to said Amos Pratt, upon the agreement of said Pratt, with said D'Wolf, dated September 28, 1852; and that upon the making of said payments, in either of said ways, said D'Wolf was to execute a deed of said land to complainant. The agreement between complainant and said D'Wolf was recorded in recorder's office of Cook county, January 24th, 1853, and complainant immediately took and now holds possession of said land.

That after the sale and conveyance of said agreement and premises, by Parker, to the complainant, said D'Wolf made a deed of said fifteen acres of land to complainant, and the complainant canceled his agreements with said D'Wolf, and released said D'Wolf from any further payments on his contract with said Pratt.

That by the said several proceedings and conveyances aforesaid, complainant became vested with all the right, title and interest of said D'Wolf, and having previously, as above stated, acquired all the interest of said Pratt, in said land, the complainant insists that he is, as against said Pratt, and all persons claiming by, through or under him, the true and equitable owner of said land.

That complainant has requested said Amos Pratt to execute to him a deed of said land, but that he has refused to do so, and as complainant is informed, has conveyed his interest therein to one Jeremiah Pratt. That said Jeremiah Pratt is a brother of said Amos Pratt, and that said deed to said Jeremiah Pratt was without consideration, and intended to incumber and defeat, if possible, the complainant's title to said land. That said deed is fraudulent, and made with full notice to Jeremiah Pratt of the contract between Amos Pratt and D'Wolf, and of the assignment of said contract by Amos Pratt to Parker; and that Jeremiah Pratt holds all the interest he acquired by said deed, as trustee for complainant. That complainant has applied to said Jeremiah Pratt to execute a deed of said premises, but that he refuses to do so, and claims to be the owner of said lands.

The bill prays for an answer without oath, and for a decree compelling said Amos Pratt and Jeremiah Pratt (who are made parties defendant) to release and quit-claim the said fifteen acres of land to complainant, and for general relief.

Jeremiah Pratt filed his answer, admitting the title to said fifteen acres of land in Amos Pratt, in the manner and at the time stated in the bill, and the agreement between Amos Pratt and Clement H. D'Wolf, but states, that by said agreement several large sums of money were to be paid, which have become due and are not paid, either to said Amos Pratt or any one for him —and that for that reason said agreement is wholly void; admits that the agreement between Amos Pratt and Warren Parker, as stated in the bill, may have been made, but that the defendant does not know the particulars of it.

Admits that the deposit of said agreements may have been made with Brown and Hurd, as alleged in the bill, and that a sale of said agreement may have been made, but denies all knowledge of the particulars respecting said delivery and sale—

and states upon information and belief, that before said sale, Amos Pratt, on account of some defects in the title Parker had agreed to convey to him, notified said Parker and said Brown and Hurd, that he had rescinded his contract with said Parker, and had thereby become entitled to have said pledge restored to him.

The answer then states, on information and belief, that the sale was irregular and without authority, but defendant does not know particulars. Denies that complainant, by virtue of his purchase, became the owner of said land, and insists that if said purchase was legal and regular, still said complainant acquired no other title thereby than said Amos Pratt had before said assignment.

That it may be true that complainant purchased said land of Clement H. D'Wolf, but defendant has no knowledge of it. Insists that if such agreement of purchase was made, complainant ought to have paid the money D'Wolf agreed to pay Amos Pratt. Charges, on information and belief, that neither complainant nor D'Wolf made said payments, but made default thereon, and that after such default, Amos Pratt, or some one for him notified Parker, Brown and Hurd, and complainant, not to sell or purchase said agreement, and that the same was void; that no payment was ever made to Amos Pratt on said agreement, or to the said defendant, Jeremiah Pratt.

Denies that complainant acquired any title by said sale, and insists that after default in the payments, Amos Pratt was not bound to make a conveyance of said lands, and that complainant by his purchase acquired an agreement that had been already violated, and was without force.

Admits that complainant may have released D'Wolf, but denies the validity of such release. States that the assignment to Parker, if any such was made, was only as collateral security, for the performance of a contract entered into between said Pratt and Amos Parker, for the conveyance by said Parker of certain lands to Amos Pratt. That the title to said lands was defective, in consequence of which, said agreement was void. That the defendant had called upon the complainant and offered to settle, being still willing to receive the amount due on the articles of agreement between Amos Pratt and D'Wolf. That the complainant refused to make any settlement with the defendant or to pay him any thing, and that it is too late to enforce a specific performance of said agreement. That the purchase of the complainant was fraudulent, and that he never requested Amos Pratt to make a conveyance of his interest in said land. That Amos Pratt conveyed said land to the defendant by quit-claim deed, October 10th, 1853, and that the deed was recorded

on the same day. That no notice was given to the defendant of the default of Amos Pratt, nor was he ever notified of the intended sale of said articles of agreement until after said sale, and that defendant did not know of the agreement between Pratt and D'Wolf, and had not seen the record of the same at the time of the conveyance to him by Amos Pratt.

The answer further denies that the deed from Amos Pratt to defendant was without consideration, and states that the consideration was $3,300, which was paid, part in money and property, and part in assuming and paying the debts of Amos Pratt. Admits that the defendant is a brother of Amos Pratt, and insists that by virtue of the deed to him from Amos Pratt, he acquired all the rights of said Amos Pratt in said land, and became entitled to all the moneys due from D'Wolf on said agreement, and in default of payment of the same, became invested with the power to declare said agreement null and void. Admits that complainant requested the defendant to make conveyance of said lands, and that he refused to do so, without full payment of the amount specified in D'Wolf's agreement, and states that defendant then notified complainant that unless he made such payment he would declare said agreement forfeited. That complainant refused to make payment, and defendant notified him that he should consider said agreement at an end.

And on the said 24th day of Jan. 1857, said Jeremiah Pratt filed in said court his cross bill, setting forth in substance the filing of the original bill, and that Amos Pratt, being the owner of the lands in said original bill described, on the 28th day of September, 1852, covenanted to convey the same to Clement H. D'Wolf, and referring to said original bill for the particulars of said D'Wolf's agreement.

That by said agreement said D'Wolf stipulated to pay said Amos Pratt $4,050, $100 cash in hand, $600 in one year, and the balance in six equal annual payments; and said Amos Pratt agreed, upon the payment of said money, to convey said land to said D'Wolf. That it was further agreed that in case of default in payment of said money, said agreement should be void, and said D'Wolf and his assigns should become the tenants of said Amos Pratt; and refers for particulars to said original bill.

States that agreement was recorded Oct. 11, 1853.

That on the 23rd day of December, 1853, said Amos Pratt assigned said agreement to one Warren Parker, as collateral security, for the payment of a certain undertaking with said Parker, and for no other purpose. That by some means, unknown to complainant, said agreement came into the possession of one Horatio O. Stone, who claims some kind of title to said lands, and by the exhibition of said agreement, is deluding

certain persons into the impression that he has a good title to said land.

That by the same means said Stone has already induced some persons to purchase portions of said land, and has otherwise injured complainant's title to said property, and opened the way for litigation and dispute. That neither D'Wolf nor Stone have made any of the payments for said land. That on the 7th day of October, 1853, said Amos Pratt, by his quit claim deed of that date, conveyed to complainant said lands, which deed was recorded Oct. 11, 1853, and was received by complainant without any notice of said agreement. · Complainant insists that his deed was first recorded, and that he had no notice of the said agreement, and that he is entitled to have and to hold said land free from said agreement.

That said D'Wolf and said Stone have failed to make the payments on said agreement, and that such agreement should be declared void.

That said Stone and D'Wolf are, by the proceedings aforesaid, trying to defraud complainant and other persons who may be induced to buy any part of said land from them.

Makes said Stone and D'Wolf parties defendant; prays that they may answer said cross bill; that the court may decree said agreement between D'Wolf and Amos Pratt to be delivered up to be canceled, and for general relief.

The appellant filed his answer to said cross bill of Jeremiah Pratt on the 13th day of April, 1857, admitting the filing of said original bill, the execution of the agreement between Amos Pratt and Clement H. D'Wolf, and insists that said agreement was filed for record, and recorded in the office of the recorder of Cook county, on the 28th day of September, 1852, and in other respects setting forth the title and claim of the appellant, the same as in his original bill.

On the same day appellant filed in the court below a general replication to the answer of Jeremiah Pratt, to his original bill, and Jeremiah Pratt filed a general replication to the answer of appellant to his cross bill.

The original bill was taken for confessed as to Amos Pratt.

The only evidence offered by the defendant, Jeremiah Pratt, was a quit claim deed from Amos Pratt to himself, dated Oct. 7th, 1853, and acknowledged and recorded Oct. 10th, 1853, purporting to convey to said Jeremiah Pratt the' north fifteen acres of the west half of south-west quarter of section 34, township 39 north, range 14 east, third principal meridian, Cook county, Ill.

On the 7th day of March, 1860, this cause was submitted to the court, on the pleadings and proofs, and a decree entered therein, dismissing the original and cross bills.

The appellant brings the case into this court, and assigns for error—the decree of the court dismissing the original bill ; the refusal of the court to order a conveyance to be made to him by Jeremiah Pratt ; and the refusal of the court to make a decree in favor of appellant, as prayed for.

SCATES, McALLISTER & JEWETT, for Appellant.

RANDALL, and SNAPP & CONE, for Appellee.

CATON, C. J.    On the 23rd of September,.1852, A. Pratt, by indenture, agreed to sell and convey to D'Wolf, or his assigns, several parcels of land for the gross sum of four thousand and fifty dollars, all on time except one hundred dollars; and D'Wolf, by the same instrument, agreed to pay the purchase money as therein stipulated.

On the 23rd of September, 1853, Pratt agreed that certain covenants with one Parker, should be performed on the 10th of October, 1853, and upon his failure to do so, was to forfeit and pay the sum of one thousand dollars as stipulated damages, to secure which, he deposited with Brown and Hurd the obligation of D'Wolf to pay him the purchase money, and they were authorized to deliver it to Parker, in case Pratt failed to perform or to pay the thousand dollars.    And Parker was authorized to sell this contract of D'Wolf, in open market, and thus raise the money with which to pay himself the thousand dollars.

Before the 11th of October, 1853, Pratt, alleging that he had been defrauded by Parker, forbade Brown and Hurd delivering the contract, which had been deposited with them, to Parker.

On the 15th of January, 1853, Stone purchased of D'Wolf fifteen acres, part of the premises which Pratt had sold and agreed to convey to D'Wolf.

Brown and Hurd delivered the contract which Pratt had left with them, as above stated, to Parker, who, on the 28th of January, 1854, sold it in pursuance of his original contract with Pratt, and Stone became the purchaser for one thousand dollars, which was just sufficient to pay the forfeiture provided for in the contract between Pratt and Parker.

Stone, insisting that by the purchase of the contract, he was entitled to recover the money due thereon in place of Pratt, and that Pratt was thereby in effect fully paid the purchase money for which he had agreed to convey the premises sold to D'Wolf, filed this bill to compel Pratt to convey to him the fifteen acres, which he had purchased of D'Wolf, parcel of that which D'Wolf had bought of Pratt.

3

With the view we take of the case, it is unnecessary to advert to the sale of the premises by A. Pratt to J. Pratt.

It is a well settled rule of law, that an entire contract cannot be divided so as to compel a party to perform it in parcels, either to different persons or at different times. When D'Wolf sold a part of the premises to Stone, he could not thereby impose the legal obligation upon Pratt to convey that portion to Stone, and the balance to himself. That would be making it in fact two contracts instead of one. It was asking him to make satisfaction to two instead of one. In case of disagreement it exposed him to two prosecutions instead of one, and required him to make two deeds instead of one. This is a hardship which the common law will never allow to be imposed upon a promisor or an obligor. Nor is this principle of the common law ignored by courts of equity, although in exceptional cases they will overlook it, where it is necessary to protect the rights of an innocent, fair and *bona fide* purchaser against a contemplated fraud.

This is a bill for the specific performance of an agreement by one who at law has no claims whatever upon the defendant, at least in his own name. Such a bill is always addressed to the sound discretion of the court, which must be governed by the circumstances of each case as it is presented. In the case of *Lear* v. *Chouteau*, 23 Ill. 39, this court said: "In order to induce a court of equity to enforce specifically a contract, it must be founded on a good consideration, it must be reasonable, fair and just. If its terms are such as our sense of justice revolts at, this court will not enforce it, though admitted to be binding at law." It may be added, that the complainant must show no oppression or unconscionable advantage, when he comes into a court of conscience asking for a remedy beyond the letter of his strict rights. He must not ask for a favor beyond his technical legal rights when he bases his claim to that favor upon a hard, oppressive, technical advantage. He must stand before the court prepared to meet its scrutiny without a blush, relying upon the advocacy of a well regulated conscience in his favor. Such must not only be his own position, but he must show that it is not unjust or oppressive to the defendant, to compel him to perform specifically.

Let us then examine for a moment the position of these parties respectively. Waiving the question of the division of the contract, the complainant, before he could call on the defendant to convey to him this land, was obliged to satisfy an obligation which secured to the defendant about four thousand dollars. He attempts to do this, not by paying him or any one else having a right to receive the money, the actual amount due, or to

become due, on the contract, but he purchases the contract at a forced sale for one thousand dollars. This is the extent of his merit. The defendant, by his contract with D'Wolf, was entitled to receive about the sum of four thousand ·dollars, before he could be asked, even by D'Wolf himself, to convey any portion of the premises. Now, what has he realized for this four thousand dollars worth of land? Absolutely nothing! His claim, or right to receive the money was sold (and upon the validity or effect of that sale we pass no opinion), to pay a forfeit. Nothing more—nothing for which he had received value. Now all of this may have been a strictly legal transaction. The defendant, by his own folly, may have frittered away his legal right to this money or to the land, but it is not such a transaction as should induce a court of equity to throw down the legal barriers which surround the defendant, and compel him to do more for the ease and benefit of the complainant than the strict rules of law will give him. Equity will never give the pound of flesh, although it is in the bond, but will leave the law to give its value only. We shall not compel the defendant to recognize a dividing up of his obligations under this contract, but shall allow him, without regret, to insist upon his legal rights.

The decree of the court below is affirmed.

*Decree affirmed.*