(55 App. Div. 225.)

ST. REGIS PAPER CO. v. SANTA CLARA LUMBER CO. et al.

(Supreme Court, Appellate Division, Third Department.  November 16, 1900.)

1. SPECIFIC PERFORMANCE—CONTRACTS TO SELL MARKETABLE CHATTELS.

Where a lumber company contracts to furnish an agreed amount of pulp wood to plaintiff each year for 10 years, and not to sell wood to other parties so as to prevent a fulfillment of the contract, a decree of specific performance will not be granted on rescission of the contract by the company, since that remedy will not be granted where the contract relates solely to marketable commodity.

2. TEMPORARY INJUNCTIONS—CONTRACTS—SPECIFIC PERFORMANCE.

Where a lumber company contracts to sell an agreed amount of pulp wood to plaintiff each year for 10 years, and not to sell wood, or the land on which it is grown, to other parties so as to prevent a fulfillment of the contract, a temporary injunction restraining the sale of the land or the wood growing thereon will be set aside, since the contract is one where specific performance will not be decreed.

**3. SAME—BREACH OF CONTRACT—QUESTION FOR TRIAL.**

Where a lumber company contracts to sell an agreed amount of pulp wood to plaintiff each year for 10 years, and not to sell wood, or the land on which it is grown, so as to prevent a fulfillment of the contract, a temporary injunction restraining the sale of the land or the wood growing thereon, granted on the rescission of the contract by the company, will be set aside where the defendant alleges breach of contract in defense, and the evidence presents the question of justification on the part of the company as one to be disposed of by trial. .

**4. SAME—PARTICULARITY.**

A temporary injunction granted pending litigation of a suit for specific performance of a contract of sale of pulp wood, restraining defendant from selling certain land or the wood thereon "so as to in any way jeopardize or prevent the complete fulfillment of the contract," is unavailing, as not sufficiently specific.

Appeal from special term.

Suit for specific performance by the St. Regis Paper Company against the Santa Clara Lumber Company and another. From an order granting a temporary injunction in favor of plaintiff (66 N. Y. Supp. 59), defendants appeal. Injunction set aside.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, MERWIN, and SMITH, JJ.

Henry W. Jessup, for appellants.

Brown, Carlisle & Hugo (Henry Purcell, of counsel), for respondent.

KELLOGG, J. The plaintiff seeks a specific performance by defendant of a contract, and asks for a decree directing a specific performance, "and, in case of the refusal or neglect of the Santa Clara Lumber Company to cut, skid, and draw the same [pulp wood] for such delivery as by the contract provided, then that the cutting, skidding, and drawing thereof be done at the expense of the Santa Clara Lumber Company, under the covenants of said contract, as decreed by the court." The plaintiff also asks for a permanent injunction against the Santa Clara Lumber Company restraining it "from selling or disposing of any of its said lands [50 square miles of wild land in the Adirondacks] or the pulp wood on the said lands in any way so as to jeopardize or prevent the complete fulfillment and performance of the contract." (The contract is to run for 10 years, and at the option of plaintiff is to be continued for another 10 years; 20 years in all.) The complaint does not ask for damages because of any alleged breach of the contract, or damages in case specific performance for any reason is denied. The answer, for defense, alleges a breach by plaintiff of material covenants of the contract, and because of such breach a rescission thereof by defendant. Also alleges as a defense that plaintiff has an adequate and complete remedy at law. On the pleadings, supported by numerous affidavits, the special term made the order appealed from. The order follows substantially the prayer of the complaint, and enjoins this defendant during the pendency of the action from "selling or disposing of any of the thirty-two thousand (32,000) acres of land described in the complaint, * * * or the pulp wood or timber thereon, consisting of spruce and balsam, so as to in any way

jeopardize or prevent the complete fulfillment and performance of the contract," etc. The clause in the contract upon which presumably this order is based reads as follows:

"It is further provided that said party of the first part will .not, during the term of this contract, sell any of its lands, or the pulp wood thereon, so as to in any way jeopardize or prevent its complete fulfillment and performance of this contract."

To determine whether the order was discreetly made, it is necessary to consider several things: First. Is there any reasonable likelihood that, in any event, a court of equity will commit itself to a decree for specific performance of the positive terms of this contract? Second. Is it a case, on any ground, for grave doubt as to how the trial will result upon the issues made, a case where conveniences should be balanced, and were these properly resolved in favor of plaintiff? Third. Should the court grant an interlocutory restraining order on such an indefinite, negative covenant, or in such uncertain terms, and with limits so undefined, leaving it, in effect, to the party enjoined in the first instance to determine whether his act will jeopardize the performance of the contract?

The contract is all that defendant relies upon. It is in writing. It is a contract for the sale and delivery of a certain number of cords of pulp wood; the delivery to extend over 10 years, from 11,000 to 13,000 cords a year, and at the option of plaintiff the delivery to continue for 10 additional years, the same quantity annually. It is contemplated that defendant will deliver only green wood cut each year between August 15th and June 1st; that it shall be of spruce and balsam, stripped of bark, and cut into pieces 24 inches long. It makes no difference to the plaintiff where the pulp wood comes from, and there is nothing in the contract binding the defendant to take it from the land it now owns. The defendant may go into the market and buy it, or may procure it cut from other lands, or may purchase other lands and obtain it there. This is not a contract for the sale of any standing timber or trees, nor of any land or interest in any land. It is a contract for the sale and delivery of pulp wood, a marketable commodity, at this time and in this country very extensively used, and bought and sold in great quantities, with as uniform a market price as any other species of lumber, timber, or wood. Nothing is said in the contract about any lien, or title, or right accruing to the plaintiff except a lien upon the pulp wood cut, and that is limited to advances in money made by plaintiff for work done upon it. All else appearing in the contract referring to the land or standing timber is incidental, except the negative covenant not to sell the land or pulp wood thereon so as to jeopardize or prevent performance by defendant. This clause: "It is further provided that in no case shall party of the first part be required to deliver in the aggregate (unless it shall choose to do so) more than the amount of pulp wood which may be obtained from the lands now owned by it, being about thirty-two thousand acres,"—is only a safety clause for defendant, a measure of quantity in a certain contingency. And the provision, in case of fire, that defendant shall "not be required (unless it shall

so choose) to deliver any more wood in the aggregate than it is still able to obtain from its said lands, provided wood has not hereafter been cut from said lands, and sold to other parties. In such case first party agrees to purchase and deliver to second party as much wood as has been delivered to others, but not in the aggregate to exceed 120,000 cords,"—this also is a limitation on quantity only, and for defendant's benefit; but it is also noticeable that in express terms the parties contemplated that defendant might cut and sell pulp wood from these lands to other parties. Nor does the clause not to sell the land or pulp wood so as to jeopardize or prevent the performance of the contract by defendant necessarily conflict with this, for it is obvious that performance of the contract would not be jeopardized or prevented if the defendant was able to procure the pulp wood in the market, or from other lands, to fill its contract.

Beyond question, I think, this contract is one relating solely to chattels, and in no sense is it a contract relating to realty. The general rule as to this class of contracts, as laid down in all the cases, is declared in Pomeroy on Specific Performance (section 2):

> "The doctrine is equally well settled that in general a court of equitable jurisdiction will not decree the specific performance of contracts relating to chattels, because there is not any specific quality in the individual articles which gives them a special value to the contracting party, and their money value recovered as damages will enable him to purchase others in the market of like kind and quality."

There is still another and more formidable reason why, in contracts of this kind, the court will not decree specific performance, and that relates to the difficulties in the way of executing the decree.

Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955, was an action in which specific performance of the contract for getting out and delivering marble from a certain quarry was prayed for by one of the parties. Justice Strong, writing for the supreme court, says:

> "It is manifest that the court cannot superintend the execution of such a decree. It is quite impracticable."

Rayner v. Stone, 2 Eden, 128, was an action for specific performance, brought by a lessor to compel the lessee to perform the covenants of the lease as to mending hedges and fences and keeping the mansion house in repair. Lord Worthington said:

> "How can a master judge of repairs in husbandry? How can specific performance of things of this kind be decreed? The nature of the thing shows the absurdity of drawing these questions from the proper trial and jurisdiction."

To the same effect is Blackett v. Bates, 1 Ch. App. 117. Lord Cranworth said:

> "The court has no means of enforcing the performance of daily duties during the term of the lease. That it could do nothing more than punish the party by imprisonment or fine in case of failure to perform them, and might be called on for a number of years to issue repeated attachments for default."

To the same effect is Johnson v. Railroad Co., 3 De Gex, M. & G. 914. Here was a contract to conduct defendant's road, and keep its rolling stock in repair. To the same effect are Railway Co. v.

Wythes, 5 De Gex, M. & G. 880 (a contract to construct a railway); Willingham v. Hooven, 74 Ga. 233 (a contract to set up a sawmill, and see that it cut a specified amount of lumber); Wharton v. Stoutenburgh, 35 N. J. Eq. 266 (a contract for the working of mines); Fothergill v. Rowland, L. R. 17 Eq. 132 (a contract for the sale and delivery of all the coal to be mined from a particular quarry during a term of years).

Beck v. Allison, 56 N. Y. 366, was a case in which the lessee sought to compel the lessor to make repairs to a building, as covenanted in the lease. It was held that, because of the attending difficulties, the court would not assume the duty. In this case Grover, J., cites with approval Rayner v. Stone, supra, Railway Co. v. Wythes, supra, Lucas v. Commerford, 3 Brown, Ch. 166; and asks:

"How can specific performance of things of this kind be decreed? The idea that a court can appoint a receiver to take possession of the property and cause the work to be done with money furnished by the defendant would be, in the language of Lord Worthington, absurd." The process of attachment to enforce the decree he regarded as equally ineffectual, and says: "It is obvious that the execution of contracts of this description under the supervision and control of the court would be found very difficult, if not impracticable. * * * It is for these reasons that such powers have never been exercised in this country."

In Wharton v. Stoutenburgh, 35 N. J. Eq. 266, Depue, J., on appeal said:

"There is a class of special and exceptional contracts in which courts of equity refuse to exercise jurisdiction by way of specific performance. These are contracts having such terms and provisions that the court could not carry into effect its decree without some personal supervision and oversight over the work to be done, extending over a considerable period of time. * * * In such cases the court declines to interfere because of its inability to give relief by one decree."

In Standard Fashion Co. v. Siegel-Cooper Co., 157 N. Y. 60, 51 N. E. 408, 43 L. R. A. 854, Vann, J., says:

"Contracts which require the performance of varied and continuous acts, or the exercise of special skill, taste, and judgment, will not, as a general rule, be enforced by courts of equity, because the execution of the decree would require such constant supervision as to make judicial control a matter of extreme difficulty."

The exceptions to the rule, he says, are cases which involve the rights of the public, and, where the convenience of the court is opposed by the convenience of the public, the public interest must prevail; as in the matter of railroads, etc. It was held in that case that the injunction prayed for, based upon the negative covenant of the contract "not to sell or allow to be sold on its premises during the duration of the contract any other make of paper patterns," might properly be granted as partial relief, as it would "shield the plaintiff from part of the loss caused," although the positive terms of the contract could not be enforced.

The cases of Daly v. Smith, 38 N. Y. Super. Ct. 158, and Hayes v. Willio, 11 Abb. Prac. (N. S.) 167, are also cases where injunction was deemed proper to enforce the negative terms of contracts not to sing in rival theaters, though the agreement to sing in plain-

tiffs' theaters could not be enforced; the object being to prevent the injury to plaintiff which might reasonably be expected to flow from loss of patronage and prestige to the playhouses of the plaintiffs if the singers were permitted to sing at rival theaters in the same locality. This would be relief pro tanto. "The presence of an express negative stipulation will not be found a sufficient ground for jurisdiction unless the contract is of a kind of which specific performance can be granted. * * * The court will consider whether the contract in respect of which the injunction is sought is or is not of a kind fit for specific performance." Fry, Spec. Perf. § 843.

In the case before us it is obvious that the injunction prayed for—not to sell the land or pulp wood growing thereon—would afford plaintiff no relief, or partial relief, in any event, unless specific performance of the positive terms of the contract to cut and deliver pulp wood was decreed. It would seem, from the record before us, that this contract is of such a character requiring a constant and continuous supervision by the court for so long a term, the exercise of skill, the performance of labor, the expenditure of large sums of money, duties continuous and daily for a period of 10 or 20 years, involving all the details of a lumbering business on 50 square miles of wild land in the heart of the Adirondacks, that a court of equity might properly refuse to undertake the work, as in all similar cases it heretofore in this state has refused. This consideration is of the highest importance as bearing directly upon the propriety of granting an interlocutory order enjoining defendant in aid of specific performance pending the litigation. "Where an agreement is of such a nature that it is practically impossible for a court to enforce it, and the bill for an injunction is, in effect, a bill for specific performance, equity will not interfere. High, Inj. § 1162." The answer in this case alleging such breaches of covenants in the contract on the part of plaintiff as entitled defendant to a rescission on its part, supported by the correspondence set forth in the affidavits, also makes the result of a trial so doubtful that a case is on this issue fairly presented for balancing conveniences in considering the propriety of an injunction order pendente lite. In the language of many of the cases the plaintiff must show itself "ready, willing, desirous, prompt, and eager" to perform all the essential and material acts required of it by the agreement. "There must be no willful or intentional departure, and the defects of performance must not pervade the whole, or be so essential as substantially to defeat the object which the parties intended to accomplish." Miller v. Benjamin, 142 N. Y. 617, 37 N. E. 631. Lack of good faith on the part of plaintiff would move a court to deny specific performance where otherwise it might properly grant it. Any willful act of obstruction, gross neglect of a duty towards defendant, any act which tends to make performance materially more difficult, will be taken into account by a court of equity in passing upon the question whether it will grant specific performance. McClellan v. Darrah, 50 Ill. 255; Quinn v. Roath, 37 Conn. 25. In Stone v. Pratt, 25 Ill. 16, Caton, C. J., said of a complainant in such a case: "He must stand before the court prepared to meet its

scrutiny without a blush, relying upon the advocacy of a well-regulated conscience in his favor." A substantial breach of the agreement to advance the money at defendant's request might be good cause for rescission at law. Strawboard Co. v. Inman, 134 N. Y. 92, 31 N. E. 248; Gardner v. Clark, 21 N. Y. 399; Flaherty v. Miner, 123 N. Y. 382, 25 N. E. 418. This presents a question of fact to be disposed of by trial. That the injury to the defendant which naturally follows the order here granted is greater than any possible injury which can be reasonably anticipated as happening to plaintiff in case it be not granted, is easily seen. The injury to plaintiff is purely speculative and conjectural. If the price of pulp wood shall go down in the future, plaintiff reaps a benefit by a rescission of the contract. If the price should go up, the measure of its damages is certain, and easily calculated, and the defendant is solvent, and able to make good to plaintiff the damages suffered; and it is to be presumed defendant will continue to be solvent. The injunction compels defendant to let plaintiff have the 12,666 cords (worth at contract price $113,994) already cut, or suffer a total loss by decay. It compels defendant to deliver all pulp wood cut in the future to the plaintiff, whether plaintiff performs on its part by making advances, or by payment for wood delivered, or not. It practically ties up the business of the defendant, makes its mills idle, subjects defendant to the perils of forest fires in its timber lands and to any depreciation in values of its lands, with no protection by bond or undertaking in this respect, and practically decrees an unconditional specific performance during pendency of the action on the part of defendant, with no reciprocal provision for any performance by the plaintiff except that it shall give bonds to take the pulp wood. The damages likely to result to defendant in case of its refusal to go on under the contract seem immeasurable.

We come now to an examination of the terms of the order itself. The defendant is "enjoined from selling or disposing of any of the thirty-two thousand (32,000) acres of land described in the complaint, * * * or the pulp wood or timber thereon, consisting of spruce and balsam, so as to in any way jeopardize or prevent the complete fulfillment and performance of the contract." It will be noted that this order is not an order not to sell any of the land, or any of the pulp wood, but the defendant is permitted to sell any or all of the land, or to sell any or all of the pulp-wood timber growing thereon, in case it shall not jeopardize or prevent the performance of the contract. What is it that will jeopardize or prevent performance of the contract? The defendant has clearly the right to get all the pulp wood needed to fill the annual quota of cords from other lands, or to procure the same by purchase in the market. So long as defendant has the means, it has the faculty to perform; but at every sale of an acre of the land or of a cord of the wood the question must arise to be litigated, "does this jeopardize or prevent performance of the contract?" Collins v. Plumb, 16 Ves. 454, was a case involving like vague, indefinite, and uncertain terms. The action sought an injunction on the covenant of a contract "not to sell or dispose of the water from the

said well to any person or persons whomsoever to the injury of the proprietors of the said water works." The injunction was refused. The lord chancellor said:

"Observe the situation of the defendant. Upon every application to commit for breach of the injunction, the only mode of giving effect to the decree, a trial must in each instance be directed to ascertain whether that act which might have been done without injury to the plaintiff has been done without injury."

Caswell v. Gibbs, 33 Mich. 331, is a similar case. An injunction was sought to prevent the violation of a covenant "not to tow vessels in competition" with plaintiff. The bill was dismissed, the court saying:

"Should we attempt to enforce this agreement by restraining and enjoining defendant from competing with the complainant in the business of towing vessels, * * * the question must still arise, in every instance where it is alleged that the defendant has violated his agreement or the decree of the court, whether the defendant did in such case really obtain that which, had he not interfered, the complainant would have obtained."

These cases illustrate the fatal difficulties which attend a contract, or a decree, or an injunction order made in such fast and loose language, giving scope to the exercise of judgment on the part of the one sought to be enjoined. It is not conceivable that a court of equity will deliberately set a trap of that nature, and then presume to punish a party for falling into it. An injunction order, to be enforceable, must define specifically what the enjoined must not do or must do. To leave it to the judgment of the party, and then punish him for any mistake of judgment, would be inequitable. For the reasons stated, the order granting an injunction herein pendente lite should be set aside, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.