Order affirmed, without costs.

---

ST. REGIS PAPER COMPANY, Appellant, *v.* THE SANTA CLARA LUMBER COMPANY, Respondent, Impleaded with THE BROOKLYN COOPERAGE COMPANY.

*Rescission of a lumber contract — when justified by the vendee's failure to promptly make advances on wood cut — cost of the work, how determined — what arbitration agreement may be disregarded.*

A corporation owning a tract of timber land entered into a contract whereby it agreed to sell and deliver to another corporation yearly from eleven to twelve thousand cords of pulp wood from such land. The contract was to continue for ten years with an option to the vendee corporation to continue it for ten years longer. The contract contained a provision that the vendee "shall make such advances of money to party of the first part (the vendor) as it may request during the progress of the work, but party of the second part (the vendee) need not advance more than approximately the cost of work done."

During the performance of the contract the vendee, with knowledge of the cost of the work done by the vendor and an understanding of the terms of the contract, deliberately and intentionally refused and neglected to make, upon the request of the vendor, advances approximating the cost of the work. The vendor thereupon notified the vendee that it elected to rescind the contract.

*Held*, that the vendor was entitled to an adjudication that its rescission of the contract was legal and effectual and that such contract had no further binding force and effect as against the vendor or its property;

That the fair meaning of the clause of the contract respecting the advances was that the vendor should cut and handle the wood in a reasonable and proper manner, and that the vendee should, upon the vendor's request, advance to the latter the approximate cost of the wood cut and remaining on the land or in transit therefrom;

That the cost of doing the work on the lands covered by the contract would control the amount of such advances, even though such cost was greater on such lands than it would be upon other lands;

That the fact that the vendor demanded a somewhat larger amount of advances or that the vendee paid a somewhat smaller amount of advances than should have been demanded or paid, would not justify an arbitrary forfeiture of the contract, if the delinquent party acted in good faith with reasonable expedition, care and prudence in fulfilling its part of the contract;

That the vendee, however, having deliberately violated the terms of the contract in a material respect, the vendor was entitled to rescind the contract, notwithstanding that the vendee did not itself abandon the contract or show a desire to do so;

That while a contract may properly require, as a condition precedent to a recovery, an arbitration for the ascertainment of amounts or particulars, a provision that all matters of dispute shall be arbitrated is not binding and may be disregarded.

PARKER, P. J., and CHASE, J., dissented.

APPEAL by the plaintiff, the St. Regis Paper Company, from a judgment of the Supreme Court in favor of the defendant, the Santa Clara Lumber Company, entered in the office of the clerk of the county of Franklin on the 16th day of February, 1904, upon the decision of the court, rendered after a trial at an adjourned term of the Franklin Special Term, with notice of an intention to bring up for review upon such appeal an order bearing date the 6th day of February, 1904, and entered in said clerk's office amending the decision upon which the said judgment was entered.

*Elon R. Brown* and *Henry Purcell*, for the appellant.

*Henry W. Jessup*, for the respondent.

Judgment and order affirmed, with costs, on the opinion of Justice JOHN M. KELLOGG at Special Term.

All concurred, except PARKER, P. J., and CHASE, J., dissenting.

The following is the opinion of KELLOGG, J., delivered at Special Term:

KELLOGG, J.:

The defendant lumber company, the owner of about 32,000 acres of land in the Adirondacks with about 424,000 cords of pulp wood thereon, agreed to sell and deliver to the plaintiff at Watertown, N. Y., or an equivalent place, rossed pulp wood at nine dollars per cord, the delivery, from 11,000 to 12,000 cords per year, to begin the 1st day of June, 1900, and to continue for ten years at the rate of about 1,200 cords per month for ten months of each year, with the right to the plaintiff to continue said contract for ten years more at twelve dollars per cord. It was provided further that the defendant need not deliver more pulp wood than could be obtained from said lands, and it is excused in case it could not deliver on account of fire or condemnation by the State, and it was not to sell the land or wood so as to jeopardize or prevent its performance of said contract; and further: "Party of the second part (plaintiff) shall make such advances of money to party of the first part (defendant) as it may request during the progress of the work, but party of the second part need not advance more than approximately the cost of work done. * * * It is further agreed that said party of the second part shall be deemed to have an equitable interest in said pulp wood for advances made by them as hereinbefore provided."

The defendant entered upon and continued in the performance of the contract until April 12, 1900, when it claimed to rescind the same on account of the plaintiff's failure to make advances as agreed. Thereupon the plaintiff brings this action, alleging its performance and defendant's refusal to perform, and that it has sold a part of the lands to the Brooklyn Cooperage Company, and asks specific performance and that the defendant be enjoined from selling the land or the wood elsewhere.

The Appellate Division (*St. Regis Paper Co.* v. *Santa Clara Co.*, 55 App. Div. 225) dissolved the injunction granted in this action upon three grounds:

(1) That it was not probable that a court of equity would enforce a specific performance of the contract, as it was practically a sale of personal property.

(2) That upon the papers it was doubtful if the plaintiff could recover at all, as it must show that it was performing its contract fully, and if there had been a substantial breach by it in making

the advances as alleged by the defendant, that might furnish a good ground for rescission.

(3) On account of the difficulty and danger of enforcing such and so indefinite covenants by injunction.

The Court of Appeals (173 N. Y. 149) reversed the decision of the lower courts dismissing the complaint at the trial upon the first ground stated above, and held that, taking all the allegations of the complaint as true, it might furnish grounds for equitable relief, if not for specific performance, at least for an enforcement of the negative covenant not to sell the land. The second ground advanced by the Appellate Division for vacating the injunction was not before the Court of Appeals and not considered by it, and is, therefore, so far as it decided the point, the law of this case. That court practically held that a substantial breach of the agreement to make the advances as alleged by the defendant, if proved, would furnish a good ground for a rescission of the contract. An unintentional or unimportant violation or an act done through ignorance or perhaps excusable mistake, ought not to be sufficient ground for a rescission of a contract involving important values. But there can be no question that a willful and intentional departure from a contract, where the defects of performance pervade the whole and are so essential as substantially to defeat the object which the parties intended to accomplish, that such defects are ample grounds for rescission. (*St. Regis Paper Co.* v. *Santa Clara Co.*, 55 App. Div. 225; *Miller* v. *Benjamin*, 142 N. Y. 613; *Wharton & Co.* v. *Winch*, 140 id. 287; *Norrington* v. *Wright*, 115 U. S. 188.)

It is not necessary that the defaulting party actually abandon the contract or show an intention so to do in order to enable the other party to rescind; he may want to retain the contract and its benefits, but be unable to perform as agreed, or may wish to annoy or coerce or deprive the other party of his contract rights. But when he, knowing all the facts, deliberately and intentionally violates the contract upon his part in a material respect, an inquiry as to his intentions is not necessary in order to define the rights of the other party. Where one party to an executory contract has committed a breach, the other may continue his performance and recover the contract price and damages in a proper case, or may rescind the contract entirely and recover so far as may be his former position,

but if, instead of using these remedies, he stops performance and seeks to recover prospective profits, he must then show that the defaulting party had actually abandoned the work or prevented him from performing the contract and earning such profits. (*Wharton & Co.* v. *Winch, supra.*)

It is believed there is no case where a party to an executory contract may experiment with the other and deliberately refuse to perform its material obligations, and from the mere fact that he still wishes to continue the contract but only seeks to annoy or oppress the other or deprive him of his rights that he can thereby take from him his right of rescission. A party, therefore, to an executory contract who deliberately violates its terms in a material respect does so at his peril, and the injured party may rescind notwithstanding the fact that the delinquent may hope to continue to receive the benefits of a contract the obligations of which he has repudiated.

The fair meaning of this contract with reference to the advances is that the defendant shall cut and handle this wood in a reasonable and proper manner, and that the actual cost of so doing shall be advanced from time to time by the plaintiff upon the defendant's request, but the plaintiff need not, however, advance more than approximately the cost of the work done. If such cost on these lands would be greater than at other places, nevertheless it would control the advances, for the parties contracted with reference to such cost and not the cost at other places. The contract is for a sale and delivery of rossed pulp wood, of a certain quality, and such wood obtained from other lands would comply with the contract, for the plaintiff gets the kind of wood it buys, and it is not suggested that the wood from these lands is better or different than that from other lands in the vicinity. The contract, by referring to these lands, excuses the defendant from delivering more than their fair product, and gives the plaintiff a certain right to rely upon their product to insure the supply without regard to market conditions, and also the advances are controlled by the cost of the work upon these lands, and very probably are limited to wood cut upon them and remaining there or in transit from there as security. The only advances requested in this case were for the work done on the contract lands. It does not necessarily follow that demanding a little larger sum than the cost of the work already done, or neglect

in making payments fully up to the value of the work done, would be a violation of the contract. It deals with an approximation, and if either party acts in good faith with reasonable expedition, care and prudence in fulfilling its part of the contract, an arbitrary for feiture is not to be forced upon it. After having put up a reasonable amount of wood, the defendant had the right to ask the plaintiff to pay the cost. So that practically after the work was fairly begun, and the defendant by the use of its credit or money was in position to make its first request for an advance, thereafter the funds for financing the job it could properly require of the plaintiff. Under the circumstances of this case the advances were a material and necessary part of the contract, and each advance was to furnish the means with which the defendant expected and was expected to continue the performance of the contract, and by not making it the plaintiff deprived the defendant of the means of carrying out and fulfilling the contract which it had agreed to furnish, and thus tended to prevent a further performance of the contract by the defendant. Both parties to the contract were acting in the line of their business and knew the situation, and neither apparently had any advantage of the other in that respect, and it is a fair inference that without the agreement as to the advances the defendant would not have assumed to deliver wood at Watertown at the contract price.

The contract was practically agreed to in July, 1899, was dated August twenty-ninth, fixes about August fifteenth as the time to begin cutting for the next June delivery, was signed by the plaintiff September twenty-eighth, and was signed by the defendant and mailed to the plaintiff October seventh, at which time defendant requested an advance of $2,500 on account of the work theretofore done, which was paid. The defendant had in fact been cutting and skidding wood on this contract since about August first, as plaintiff knew, and the contract when signed related back to that time and embraced the wood so cut, and such was the intention of both the parties. The complaint alleges that the contract was made August twenty-ninth. The defendant, therefore, is in a position to include as a subject for advances the cost of this wood to the time that the contract was actually signed.

The cost of cutting, skidding and hauling to the stream the wood from the part of the land where the defendant was cutting was

greater than on the ordinary Adirondack lands on account of the mountainous and broken surface of the country, and it actually cost the defendant at least two dollars per cord to cut and skid the wood. The work was on the foothills of Mount Seward, and it was necessary to sloop a great part of the logs down. This fact and other extra handling of the logs made the work slow and the product from the work of the men and horses less than on ordinary ground and the cost per cord larger. So that at first the plaintiff had the right to be surprised as to the amount demanded by the defendant as the cost of the work done, and had the right to investigate and determine whether the sums required were greater than such cost. The plaintiff was in fact paying one dollar and fifteen cents per cord for cutting and skidding upon ordinary ground not involving the difficulties and extra work here found.

The plaintiff sent Mr. Smith, an experienced woodsman familiar with such work, to the woods, who remained there three or four days, learned the number of men and horses employed, the wages paid and the number of cords skidded. And defendant made a written report to him covering those subjects, and he saw the wood that was cut, but not skidded or scaled. He saw the physical condition of the country and the manner in which the work was done, and that the work was much greater and the expense much larger than upon the ordinary job. He knew the work was being carefully and economically done by competent and skillful men, and was unable to make any criticism with reference to it. The defendant later, at the request of the plaintiff, stated to it the number of men and horses employed and the wages paid, showing a weekly expenditure of about $1,584, with a product of about 800 cords per week, and also the incidental expenses, from which it assumed that $2 per cord was the fair cost of the wood. After Mr. Smith had inspected the job and made his report and the defendant had made this statement, if the plaintiff desired further information it was its duty to act promptly and obtain it, as it knew that the advances were required to continue the work and that each week added about $1,600 to the cost of the work done, and the defendant continually reminded it that the job could not go on unless such advances were made. Plaintiff's Mr. Smith, when at the woods, knew that the cost of cutting and skidding the wood was at least $2 per cord, and

the plaintiff, after his return and written report, knew such to be the case. And from that time the plaintiff was not uncertain or in doubt as to the approximate cost of the work done, and its refusal to make the advances and the various excuses offered were not made in good faith, but for the purpose of annoying or delaying the defendant, or forcing it to settle some outside dispute upon another contract, or to compel the defendant to borrow money from plaintiff and pay interest upon it. The second inspection of the job by plaintiff's Mr. Smith in February was similar, in all respects and manner and result, to his first visit, and in addition satisfied the plaintiff that the cost of the work, including hauling to the stream, was as claimed by the defendant. A man familiar with the business, from a knowledge of the number of men and horses employed, the wages paid and the weekly product, could easily figure the incidental expenses and would know the approximate cost of the work per cord. The incidental expenses were not materially different from other jobs.

As a matter of fact the plaintiff did not at any time advance the cost of the work as required by the defendant, or any fair approximation of the cost. October seventh defendant properly requested an advance of $2,500 on account of the work theretofore done, and suggested that it would make its requests about the first and fifteenth of each month. Receiving no reply, it repeated the request on the seventeenth, reported the amount of wood skidded and that the advance asked was on account of the logs cut sometime ago. The advance was paid October eighteenth. October twenty-sixth defendant reported as skidded as of October twenty-first 4,482 cords and that the weekly rate is about 600 cords, and requested an advance of $5,000 by November first. October twenty-eighth the plaintiff suggested that it would send its Mr. Smith to inspect and measure the wood and would send a check when he reported. November first the defendant expressed satisfaction at Mr. Smith's coming, but the delay in the advance was causing it disappointment and great inconvenience, and trusted it would not be compelled to wait longer. November eighth the plaintiff reports that Mr. Smith finds 5,300 cords of wood put up, but it has not been in the habit of paying more than a dollar per cord; still it will hear what the defendant has to say, and then suggests that there is another

matter which they desire to talk about and asks the defendant to come to Watertown. November ninth the defendant repeats its request and gives notice that it shall require an additional sum by November fifteenth. November seventeenth the defendant notifies plaintiff it is suffering for funds and must have full payment if the contract is to continue, and urges the payment at once of the $5,000 asked for October twenty-sixth. December fourth the plaintiff remits $7,500, saying it had hoped before being obliged to make such advances to be able to settle some claim it had on account of some previous sale of timber land, and that it understands the defendant claims it has skidded 7,000 cords of pulp wood at a cost of $2 per cord; that it does not say that it has not cost that amount but it knows the defendant will be willing to let it make an investigation. Defendant, December eleventh, acknowledges the check, repudiates the alleged claim on account of the timber lands, and says it will be glad to have the plaintiff send a proper person to investigate the work done. The plaintiff, December eighteenth, repeats that it is customary to advance only a dollar a cord and that it will do no good to send a man to look the ground over, and if the defendant is entitled to the advance asks it to send an itemized statement showing the expenses, etc. The defendant, December nineteenth, reports 10,250 cords skidded and requests $10,000. The plaintiff replies, December twentieth, asking the defendant to show upon what ground further advances are claimed. The defendant, January third, submits a statement of the number of men and horses, the wages paid, the product per week and refers to the incidental expenses, making in all about $2 per cord. This was as full a statement of the cost as the defendant was then able to make and, with the plaintiff's knowledge of the business, was all the information necessary to enable the plaintiff to determine what the approximate cost was. No further or different statement was requested. Plaintiff, January sixth, replies that it is paying elsewhere $1.15 and offers to advance $1.25 and suggests that it is only a question of interest and it will discount the defendant's notes for $10,000 to $20,000 at six per cent interest. After December fourth, when plaintiff expressed a desire to investigate, and refuses December eighteenth to send an investigator, and receives the detailed statement from the defendant

.of January third, it makes no investigation until about the middle of February, when it again sends Mr. Smith to the camps, and makes no payment until February twentieth, while the defendant, to its knowledge, was expending about $1,600 per week and the plaintiff's deficiency was growing larger each day.

It is unnecessary to follow through the correspondence. After the contract all the matters between the parties are in writing and appear in the exhibits. The defendant was repeatedly asking for money, the plaintiff continually neglecting to pay the same and offering the same excuses. There is no dispute as to the meaning of the contract as its terms are not ambiguous, and the correspondence shows that the plaintiff did not question that the defendant was entitled to advances approximately to the cost of the work done, and, as we have seen, after the return of Mr. Smith from the woods upon his first visit, there was no honest misunderstanding on the part of the plaintiff as to the cost of the work done. When it proposed an arbitration it suggested that the arbitrators settle the matter upon the correspondence and contract at an intermediate point, showing that it was not desired that the arbitrators should examine the books or determine the amount skidded or the cost.

It will not do to say that the plaintiff would not for technical reasons, or to annoy the defendant, or to compel it to make an adjustment of outside matters, or to pay the interest upon moneys which it was legally entitled to without such payment, imperil a contract of the great value represented here. The acts of the parties must be viewed by the situation as it then was. The plaintiff was building a large pulp mill in which it intended to use this wood, but was delayed so that instead of being ready for business in June, 1900, as expected, it was not ready until July, 1901, and pulp wood would suffer detriment if kept over unless it remained in the water. In June, 1900, at Watertown, rossed pulp wood was worth only from nine dollars to nine dollars and fifty cents per cord, and this wood, the plaintiff advancing the cost during the progress of the work, would approximate the latter figure. So that at the time this correspondence was going on it is not easy to say that either party had the advantage over the other on account of the value of pulp wood at Watertown. But since the alleged rescission pulp wood has very rapidly increased in value, and each June has

seen a very material advance in its price, so that the contract now, if in force, is of very great value.

I, therefore, find that the plaintiff did not make the advances as requested, approximately with the cost of the work; but with a knowledge of the cost and an understanding of the terms of the contract, deliberately and intentionally refused and neglected such advances as requested, and such refusal and neglect were not caused by any inadvertence or by any misunderstanding of the facts.

At the time each request for an advance was made the cost of the work done was equal or greater than the sum requested. In one of the later reports the defendant erroneously stated the amount of wood by 600 cords. The error was unintentional, the defendant acting in entire good faith, and the refusal of this advance at the time was not put upon the error in the report, and in the next request the error was eliminated when the defendant requested a smaller amount than formerly asked. And at the time of this erroneous report the plaintiff had continued in default in material amounts on account of prior requests, and thereafter, after making a proper request March fifth for $17,500, and on the ninth pleading through its attorney for $15,000, it received March twelfth only $5,000 (the last advance), and March twenty-fourth the defendant's attorney asked at least $5,000 of the $12,500 then due, which request was refused.

While the expense of cutting, skidding and drawing to the stream was very large on account of the nature of the land worked, it nevertheless appears that the defendant could deliver the wood at Watertown, paying all the expenses, and realize from two to three dollars per cord over and above the actual cost of the work done. The total advances on account of the work were $25,000 — the actual cost of the work done was $37,827.98. By reason of plaintiff's refusal and neglect to make the proper advances the defendant was compelled at different times to borrow large sums of money to pay the necessary cost of the work done and paid interest upon such loans.

Two items entering into the above aggregate of cost of work done require further consideration:

(1) The defendant has a New York office and a Tupper Lake office and has charged to this job the salaries and expenses of this

Tupper Lake office, amounting to $1,635.03 for the eight months during which the contract was being performed. For four months of that time the defendant was performing some other work carried on through said office which practically occupied one-third of the time of the office force while in progress, allowing for which one-third, $272.96 should be deducted from the above aggregate.

(2) The defendant also has charged to this job the bedding and certain tools and implements which were in camp from the year before of the value of $2,197.98. While the property was worth the sum charged, it is claimed that at the most only the use of said property can be charged against this job. This may be so, but we must remember that the defendant was entering upon a contract for ten years, and at plaintiff's option for twenty years, and that the whole of this perishable property would be used up long before the ten years, and much of it during the first year, and probably some of it at least was rendered valueless before the rescission. It must also be remembered that the camps and the roads which had been built the year before were turned into this job without price, and perhaps the advantage from these sources may make up any difference in value which the plaintiff could properly criticize. But it is not very material. It is a matter that did not arise between the parties, was not discussed by them, did not enter into the computation at the time, and now only arises in showing what the actual expenses were. It does not, so far as the disposition of this case is concerned, affect in a material way the cost of the work done.

After the plaintiff had unreasonably neglected or refused the several proper requests of the defendant for advances, and the defendant had repeatedly, directly and impliedly, threatened to cease performing the contract for that reason, the plaintiff, with knowledge of the approximate cost of the work done, and with an understanding of the terms of the contract, suggested an arbitration. The defendant, through its attorney Mr. Badger, consented, and as a speedy means of arriving at a result, suggested that each party take its foreman and they select a third arbitrator, to which the plaintiff replied that it had named an arbitrator in a sealed envelope inclosed, requesting the defendant to do the same, and that the arbitrators meet at an intermediate point and arbitrate the difference between the companies upon the contract and correspondence. The

contents of the sealed envelope was " Gifford Pinchot, or any one designated by him." As he resided in Washington, D. C., it is not apparent what the plaintiff meant by an intermediate point. The defendant interprets the plaintiff's consent to arbitrate as intending to bring in the old dispute about the timber land upon another contract referred to in some of the correspondence. The defendant had not the right to suggest an arbitrator for the plaintiff, and the plaintiff had not the right to suggest that the arbitrators proceed solely upon the letters and correspondence and that they meet at an intermediate point, or that Mr. Pinchot should select an arbitrator or to leave the proposition so indefinite that it might fairly be construed as including other disputes, or that the arbitrators be agreed upon in sealed envelopes. Mr. Purcell and Mr. Badger, the counsel of the respective parties, met and had some conference, the purport of which does not appear. But after the defendant had made new demands for money, the plaintiff again referred to the matter of arbitration and Mr. Badger informed it that he supposed the conversation between Mr. Purcell and himself had avoided further discussion. Both Mr. Badger and the defendant thereafter demanded further advances. The plaintiff at different times when requests were made for advances referred to the matter of arbitration. Aside from these facts there was no real attempt to arrive at an arbitration, and the attempt made by either party had no tendency to arrive at such a result. In fact there was no actual misunderstanding or dispute. The plaintiff was intending, by discussing the matter of arbitration, only to make further delay, or to bring in the other contract as a dispute for consideration, or to obtain some advantage other than the known rights of the parties under the agreement. The plaintiff, March twelfth, writes that the proposed arbitration was as to the construction of the contract, and, April thirteenth, that it was as to the cost and the value of the work done.

While a contract may provide for an arbitration for the ascertainment of amounts or particulars as a condition precedent to a recovery, a provision that all matters of dispute arising shall be arbitrated is not binding and may be disregarded. (*Haggart* v. *Morgan*, 5 N. Y. 422; *National Contracting Co.* v. *Hudson R. W. P. Co.*, 170 id. 439; *Hamilton* v. *Liverpool, etc., Ins. Co.*, 136 U. S. 254.)

It is only necessary to consider the discussion between the parties about the arbitration in order to determine whether the plaintiff was thereby lulled into a state of repose, and in that way led into a position of a seeming forfeiture of its contract. I find that this is not so. The demands for money were continued, as well as the statements that the work could not go on without the advances. The plaintiff sends its Mr. Smith a second time to investigate the job with the same report and result as before. The defendant writes, February sixteenth, that Mr. Smith's report must show at least $15,000, and imperatively demands that amount, with an urgent threat of rescission. Plaintiff replies it will continue to make the advances notwithstanding the negotiations, and remits $10,000, saying it is $1 a cord for the wood skidded and more than $1 for wood hauled, evidently referring to the report of February thirteenth, willfully disregarding the fact that it was paying $1.15 for skidding on easy ground and had offered the defendant $1.25, and that a week's expenses of about $1,600 had been added to the cost since the report. Plaintiff knew its payments were entirely insufficient. It thus appears that the plaintiff was not misled, and that the negotiation in no way caused a breach of the contract by the plaintiff and in no way caused it to change its position.

The plaintiff's action proceeds entirely upon an allegation of full performance by it and a breach by the defendant. It seeks no relief from its own default, but is clearly in default itself. Upon receiving the notice of rescission the plaintiff offered to excuse the defendant for sending it, but did not offer to change its method of making advances, claimed it had made the advances promptly as requested, and proposed to continue in the same way. It thus placed itself in a position of standing upon its full performance and the defendant's default. It has taken the same position in the complaint in this action. The defendant entered upon the performance of the contract and at all times was ready, able, willing and desirous to carry out the same according to its terms, but was delayed and suffered great inconvenience and put to great expense on account of the default of the plaintiff in making the advances as agreed, and at the time of the last demand for payment and of the notice of rescission, the defendant was able and ready to perform and carry out its contract with the plaintiff if the plaintiff had complied with

its provisions, and the defendant was justified in electing to rescind the said contract, and did legally rescind it, having offered to return the money advanced, with the interest thereon, with its notice of rescission.

The contract having been recorded as affecting the title to real estate, as it might do according to the decision of the Court of Appeals in this case if the defendant were in default, it is proper that the defendant have judgment that its rescission of said contract is legal and effectual, and that said contract has no further binding force or effect as against the said defendant or said property. The defendant is entitled to costs of this action. Proper findings may be submitted, and if not agreed upon may be settled upon five days' notice.