St. Regis Paper Company, Appellant, *v.* The Santa Clara Lumber Company, Respondent, Impleaded with Another.

1. Contract — Construction — Equitable Relief. A contract for the sale and delivery of a designated quantity of pulp wood a year, for a certain period of years, to be taken from specified premises, owned by the contracting party, who agrees not to sell the land so as to prevent the complete fulfillment of the contract, and further agrees that the purchaser shall have an equitable interest in the wood for advances to be made in the progress of the work, is not an agreement which involves a mere sale of chattels, in default of which the remedy at law is adequate, but is an agreement under which the purchaser acquired certain rights in connection with the land, for the protection of which relief may be sought in equity.

2. Remedy at Law — When Inadequate. The remedy at law for the refusal of the vendor to perform such contract and furnish a specified quantity of pulp wood per year, from the designated premises, for a long term of years, which may, at the election of the purchaser, be extended for another term of the same length, is inadequate where the future price of the wood, the cost of transportation and the rate of wages throughout such period are unknown quantities, and where such future contingencies as the destruction of the timber by fire, or the taking of the land by the state in the exercise of eminent domain, contemplated by the contract, prevent an accurate computation of damages in the future.

3. Trial — Dismissal of Complaint on Pleadings — Erroneous When Issues Raised. A complaint in an action for the specific performance of a contract is improperly dismissed upon the pleadings where the plaintiff insists that it has fully performed the contract, while the defendant admits it has attempted to rescind it on the ground of plaintiff's nonperformance, and has proceeded in a general way as if the contract no longer existed, thus raising distinct issues for trial.

*St. Regis Paper Co.* v. *Santa Clara Lumber Co.*, 66 App. Div. 617, reversed.

(Argued December 12, 1902; decided January 6, 1903.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 21, 1901, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term.

The plaintiff seeks in this action the construction and specific performance of a contract, the material portions of which read as follows:

"This agreement, made this 29th day of August, in the year one thousand eight hundred and ninety-nine, between The Santa Clara Lumber Company, a domestic corporation duly incorporated and organized under the laws of this State, of the first part, and the St. Regis Paper Company, also a domestic corporation duly incorporated and organized under the laws of said State, of the second part, is as follows:

"The said party of the first part agrees to sell and deliver to the said party of the second part, at any point, the expense of transportation to which shall not exceed the cost of transportation from Tupper Lake Junction to Watertown, N. Y., in each and every year for ten years, commencing with the first day of June, in the year one thousand nine hundred, or as soon thereafter as the season will permit, from eleven to thirteen thousand cords of barked pulp wood, 24 inches long, such delivery to commence on or about the first day of June, one thousand nine hundred, and to continue for ten years thereafter, at the rate of about twelve hundred cords per month for ten months of each calendar year; such wood shall be good, merchantable, green spruce and balsam, to be kept and shipped separately, if said party of the second part requests the same to be so shipped, and to be not less than four inches in diameter at the small end in the rough, before rossing, at the price of $9.00 per cord, and said wood shall be green, growing wood when cut and shall be properly prepared, barked and sawed and delivered free from bark or dirt. The wood so cut shall consist of all the green spruce upon the lands cut over so as not to deliver to said second party more small wood than is necessary, except first party may reserve

all spruce 14 inches in diameter or over at top, 12 feet long or longer.

" Party of first part shall commence to cut wood on or about the 15th day of August of each year for the following season's supply.    Party of the second part shall make such advances of money to party of the first part as it may request during the progress of the work, but party of the second part need not advance more than approximately the cost of work done. Payment for the said wood shall be made by the party of the second part to the party of the first part on the 15th day of each month for the wood delivered during the next preceding calendar month, after first deducting from the aggregate of the purchase price of the said wood one-tenth of the advances made upon that season's operations until such advances have been repaid.    *    *    *

" It is further agreed that in case the mill of the party of the first part shall be destroyed or disabled by the elements or fire, a reasonable time shall be allowed to said party of the second part for the reconstruction of the same, and this agreement shall be deemed extended accordingly ; but in no case shall there be delivered in any one year more than 13,000 cords of barked wood.

" It is further provided that in no case shall said party of the first part be required to deliver in the aggregate (unless it shall chose so to do) more than the amount of pulp wood which may be obtained from the lands now owned by it, being about thirty-two thousand (32,000) acres.

" And it is further provided that in case the pulp wood upon its lands shall be either wholly or in part destroyed by fire or the elements, that then and in that case it shall not be required (unless it shall so choose) to deliver any more wood in the aggregate than it is still able to obtain from its said lands, provided wood has not hereafter been cut from said lands and sold to other parties.    In such case first party agrees to purchase and deliver to second party as much wood as has been delivered to others, but not in the aggregate to exceed 120,000 cords.

" It is further provided that in case the lands of said party of the first part or any part thereof shall be condemned and taken by the State of New York that this contract shall be deemed modified and limited in so far as the ability to perform the same on the part of the said party of the first part shall have been affected thereby, but

" It is further provided that in case such condemnation takes place to such an extent as to impair the ability of said party of the first part to perform this contract, the said party of the second part shall have the right, so far as the party of the first part is hereby able to confer the same, to claim from the State of New York the damages sustained by it in consequence of the non-delivery of said pulp wood, the delivery of which has been prevented by such condemnation.

" It is further provided that said party of the first part will not, during the term of this contract, sell any of its said lands or the pulp wood thereon so as to in any way jeopardize or prevent its complete fulfillment and performance of this contract.

" It is further agreed that if the said party of the second part shall choose so to do and shall give said party of the first part notice in writing of such election at least one year before the expiration of the term of this contract, to continue this contract for ten years longer by paying $12.00 per cord for such rossed pulp wood so delivered as herein provided, that then and in that case the said party of the first part shall sell and deliver to said party of the second part 12,000 cords of rossed pulp wood in each year for ten years from and after the term of this contract, subject to all the terms, limitations and specifications hereinbefore contained.

" Is is further agreed that said party of the second part shall be deemed to have an equitable interest in said pulp wood for advances made by them as hereinbefore provided, and the equity of said second party in this contract is assignable and may be used as collateral security for the payment of any loan or obligation made by said second party.

" It is further agreed that if the lands of the first party

herein referred to or the lands owned by second party are hereafter damaged by fire so that it becomes necessary to cut therefrom to avoid waste, said party so damaged may thereupon give reasonable notice to other party of such damage and deliveries upon this contract may be increased or decreased, as the case may be, to a reasonable extent to permit the party so damaged to conduct its operations in the woods so as to avoid unnecessary waste of wood so damaged.     *     *     *

" It is further agreed that in case the pulp and paper plant of said party of the second part shall be destroyed or disabled by the elements or fire that a reasonable time shall be allowed for the reconstruction or reparation thereof, during which time, if said party of the second part shall so elect, no delivery of pulp wood shall be made and this contract shall be deemed extended accordingly.     *     *     *

" All matters of difference that shall arise between the parties respecting this contract or the fulfillment thereof shall be submitted to two arbitrators, one of which shall be chosen by each party, and in case they fail to agree, a third arbitrator or umpire shall be chosen by the two arbitrators first appointed, and the decision of a majority shall be binding upon the parties.

" In witness whereof, the parties hereto have affixed their hands and seals on the day first above written, binding their successors and assigns."

*Elon R. Brown* and *Henry Purcell* for appellant.   Meaning and effect must be given to all language employed in a contract, provided it will not do violence to the plain intent of the parties in making the agreement. (*Buffalo E. S. R. R. Co.* v. *B. S. R. R. Co.*, 111 N. Y. 132; *Hamilton* v. *Taylor*, 18 N. Y. 358; *Wood* v. *Sheehan*, 68 N. Y. 365; *Bank of Montreal* v. *Recknagel*, 109 N. Y. 482.)   Equity should take cognizance of the plaintiff's interest in the defendant's lands under these covenants as the contract savors of the realty. (*Mayor, etc.*, v. *Law*, 125 N. Y. 380; *S. C. F. M. Co.* v. *S. W. D. Co.*, 33 Fed. Rep. 146; *Cudworth* v. *Bailey*, 17 R.

I. 495; *Willoughby* v. *Lawrence*, 116 Ill.11; *Jones* v. *Britton*, 9 S. E. Rep. 562; 2 Story Eq. Juris. § 929; *W. P. I. Co.* v. *Reymert*, 45 N. Y. 703; *Livingston* v. *Livingston*, 6 Johns. Ch. 497; *Fox* v. *Fitzsimons*, 29 Hun, 576; *Erhardt* v. *Boaro*, 113 U. S. 537; *Wood* v. *Braxton*, 54 Fed. Rep. 1005.) The covenant in the contract, " said party of the first part will not during the term of this contract sell any of its said lands or the pulp wood thereon so as to in any way jeopardize or prevent its complete fulfillment and performance of this contract," should be enforced by injunction. (Waterman on Spec. Perf. §§ 1, 6; Bispham's Eq. § 461; 3 Pom. Eq. Juris. §§ 1342, 1344; Pom. on Spec. Perf. §§ 25, 310; Beach on Inj. §§ 429, 430, 443, 444; *S. F. Co.* v. *S. C. Co.*, 157 N. Y. 60; *E. G. L. Co.* v. *B. C. Co.*, 63 Md. 299; *Lumley* v. *Wagner*, 1 De Gex, M. & G. 604; *Donnell* v. *Bennett*, L. R. [22 Ch. Div.] 835; *S. S. M. Co.* v. *U. B. & E. Co.*, 1 Holmes [U. S. Cir.], 253; *Peabody* v. *Northrup*, 98 Mass. 452; *W. U. T. Co.* v. *Rogers*, 42 N. J. Eq. 311; *W. U. T. Co.* v. *U. P. R. R. Co.*, 3 Fed. Rep. 423; *C. & A. R. Co.* v. *N. Y., L. E. & W. R. R. Co.*, 24 Fed. Rep. 516; *Goddard* v. *Wilde*, 17 Fed. Rep. 846.) Relief by specific performance should be decreed to save the plaintiff from irreparable mischief otherwise resulting from defendant's breach of contract. There is no adequate remedy at law. (2 Story's Eq. Juris. [8th ed.] §§ 719, 721a; *Buxton* v. *Lister*, 3 Atk. 384, 385; *Adderly* v. *Dixon*, 1 Sim. & Stu. 607; *E. G. L. Co.* v. *B. C. T. & Mfg. Co.*, 63 Md. 299; *Donnell* v. *Bennett*, L. R. [22 Ch. Div.] 835; *Masterton* v. *Mayor, etc.*, 7 Hill, 61; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *Wakeman* v. *W. & W. Mfg. Co.*, 101 N. Y. 205.) The plaintiff is entitled to have every intendment taken in its favor in construing the complaint upon this motion to dismiss. (*Hoffman* v. *Wright*, 137 N. Y. 621; *Sanders* v. *Soutter*, 126 N. Y. 193.)

*Henry W. Jessup* and *Albert Stickney* for respondent. The plaintiff suing in equity does not allege facts sufficient to constitute an equitable cause of action. (*Wisner* v. *C. F. J. Co.*, 25 App. Div. 362; *Edson* v. *Girvan*, 29 Hun, 422;

*Swart* v. *Boughton*, 35 Hun, 281; *Willis* v. *Fairchild*, 19 J. & S. 405; *Fisher* v. *C. O. L. Ins. Co.*, 20 J. & S. 179; *Sheridan* v. *Jackson*, 72 N. Y. 170; *Marble* v. *Ripley*, 10 Wall. 339; *Rayner* v. *Stone*, 2 Eden, 127; *Blackett* v. *Bates*, L. R. [1 Ch. App.] 117; *Fothergill* v. *Rowland*, L. R. [17 Eq.] 132.) Specific performance of the contract in suit must be refused on the ground of the lack of definiteness and certainty in the contract. (*Buxton* v. *Lister*, 3 Atk. 386; *Lord Walpole* v. *Lord Orford*, 3 Ves. 420; *Lighthouse* v. *T. Nat. Bank*, 162 N. Y. 336; *Winne* v. *Winne*, 166 N. Y. 263.) Specific performance of the contract should be denied on the ground of the impossibility of enforcing the contract in suit, by reason of the fact that its performance would require the constant intervention of a court of equity for a long period of years, with the frequent decision of many incidental questions of fact and law. (*R. M. Co.* v. *Ripley*, 10 Wall. 310; *Beck* v. *Allison*, 56 N. Y. 366; *Wheatley* v. *W. C. Co.*, L. R. [9 Eq.] 538; *Blackett* v. *Bates*, L. R. [1 Ch. App.] 117; *Powell-Duffryn Co.* v. *Tuff-Vale Co.*, L. R. [9 Ch.] 331.) Specific performance of the contract should be denied on the ground of the lack of mutuality in the remedy. (*R. M. Co.* v. *Ripley*, 10 Wall. 310; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *P. P. C. Co.* v. *T. & P. R. Co.*, 11 Fed. Rep. 625; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273; *Norris* v. *Fox*, 45 Fed. Rep. 406; *Phillips* v. *Berger*, 8 Barb. 527; *Duff* v. *Hopkins*, 33 Fed. Rep. 599; *Woodward* v. *Harris*, 2 Barb. 439; *Stocker* v. *Wedderburn*, 3 K. & J. 303; *Duvall* v. *Meyers*, 2 Md. Ch. 401.) There is an absence of any equitable lien. (*Lighthouse* v. *T. Nat. Bank*, 162 N. Y. 336; *Grinnell* v. *Suydam*, 3 Sandf. 132.) An action for damages will afford full relief to the plaintiff under the situation alleged in the complaint, and is the only method for doing justice between the parties. (*Bagley* v. *Smith*, 10 N. Y. 489; *Wakeman* v. *W. & W. Mfg. Co.*, 101 N. Y. 205; *W. C. & Mfg. Co.* v. *Holbrook*, 118 N. Y. 586; *Swain* v. *Schieffelin*, 134 N. Y. 471; *Dickinson* v. *Hart*, 142 N. Y. 183; *U. S. T. Co.* v. *O'Brien*, 143 N. Y. 384.)

This contract does not give to the plaintiff any interest or estate in the lands owned by the defendant. (19 Am. & Eng. Ency. of Law, 259.) The remedy by injunction being ancillary to the main object of the bill, it should not be granted if equity cannot specifically enforce the contract. (*Stokes* v. *Stokes*, 103 N. Y. 708; *Fargo* v. *N. Y. & N. E. R. R. Co.*, 3 Misc. Rep. 205; *S. F. Co.* v. *S. C. Co.*, 157 N. Y. 60; *Hentz* v. *L. I. R. R. Co.*, 13 Barb. 646; *R., W. & O. R. R. Co.* v. *City of Rochester*, 46 Hun, 149.) The plaintiff does not make out a case to support an injunction. (*Fothergill* v. *Rowland*, L. R. [17 Eq.] 132; *Watt* v. *Rogers*, 2 Abb. Pr. 261; *Martin* v. *Johnston*, 6 Misc. Rep. 310; *N. Y. C. Co.* v. *Halleck*, 15 N. Y. Supp. 517; *Nash* v. *Hall*, 11 Misc. Rep. 468; *Gurnee* v. *Odell*, 13 Abb. Pr. 264; *Stull* v. *Westfall*, 25 Hun, 1; *Carter* v. *Ferguson*, 58 Hun, 569.) The allegations as to rescission in the answer must be considered by this court in connection with the incomplete allegations of performance in the complaint. (*Blanchard* v. *Trim*, 38 N. Y. 225; *Wright* v. *Smith*, 13 App. Div. 536; *Koerner* v. *Henn*, 8 App. Div. 602; *Stockdale* v. *Schuyler*, 130 N. Y. 674; *Cox* v. *Stokes*, 156 N. Y. 491.)

Bartlett, J.. The complaint was dismissed by the trial judge on the pleadings and the opening of plaintiff's counsel and judgment entered to that effect, which was affirmed by the Appellate Division without opinion on the authority of same case in 55 Appellate Division, 225 (66 App. Div. 617). We are now called upon to review this determination.

This case has been twice before the Appellate Division on questions of remedy; on an appeal by the defendant from an order continuing an injunction *pendente lite* (31 Misc. Rep. 695), which resulted in reversal with an opinion (55 App. Div. 225); again on the defendant's appeal from an order of the Special Term, made after the affirmance of judgment dismissing the complaint, denying a motion to cancel the notice of *lis pendens;* this order was affirmed with an opinion. (62 App. Div. 538.)

The plaintiff seeks in this action the enforcement of a contract providing, in substance, for the sale and delivery by the defendant to the plaintiff of twelve thousand cords of pulp wood a year for the period of ten years, with an option in the plaintiff to extend the term of the contract for another ten years.

It is the contention of the plaintiff that it has set forth in the complaint an equitable cause of action which entitles it to the remedies and protection afforded by a court of equity to litigants who are properly before it.

On the other hand, it is argued by the defendant that this contract involves merely a sale of chattels, to wit, pulp wood, which may be cut by the defendant from any premises it sees fit, and that assuming it is in default of its contract, the plaintiff's remedy at law is adequate.

The counsel for the plaintiff argues that while it is a contract for the sale of chattels, it is of chattels that are to be severed from the realty, according to its terms, for the purpose of delivery, and that by those terms its faithful performance by the defendant is secured by covenants which fastened on the land indicated therein and its products so far as is necessary to insure that the chattels will be severed and delivered.

As the dismissal of the complaint was upon the pleadings, the question as to the sufficiency of the pleading is presented as upon demurrer.

An examination of a few provisions of the contract makes it very clear that the contention of the defendant's counsel that it involves a mere sale of chattels is erroneous.

The complaint alleges, in this connection, that at the time the contract was made the defendant was the owner of thirty-two thousand acres of land situated in the county of Franklin, and gives a lengthy description of the property, and avers that this tract was all the forest land which the defendant owned, and that the contract was made and entered into with reference to such land.

We thus have the premises identified from which this pulp wood was to be obtained.

There are other provisions of the contract which show con-

clusively that the parties were contracting with reference to these premises.

This provision is found in the contract : " The wood so cut shall consist of all the green spruce upon the lands cut over, so as not to deliver to said second party more small wood than necessary."·

It also provides that in case the mill of the defendant is destroyed by fire a reasonable time is to be allowed for the reconstruction of the same, and in this connection occurs the provision : " It is further provided that in no case shall said party of the first part be required to deliver in the aggregate (unless it shall choose so to do) more than the amount of pulp wood which may be obtained from the lands owned by it, being about thirty-two thousand acres."

There is a provision calculated to protect the defendant in case all or part of the pulp wood on these premises is destroyed by fire, or if the whole or a portion of the premises are condemned by the state of New York, to the effect that it shall not be compelled to deliver in such an emergency any more pulp wood " than it is still able to obtain from its said lands."

Then follow these significant provisions :

" It is further provided that said party of the first part will not, during the term of this contract, sell any of its land or the pulp wood thereon so as to in any way jeopardize or prevent its complete fulfillment and performance of this contract."

" It is further agreed that the said party of the second part shall be deemed to have an equitable interest in said pulp wood for advances made by them as hereinbefore provided and the equity of said second party in this contract is assignable and may be used as collateral security for the payment of any loan or obligation made by said second party."

The contract obligates the plaintiff to make advances from time to time to the defendant, as follows : " The party of the second part shall make such advances of money to the party of the first part as it may request during the progress of the work, but the party of the second part need not advance more than approximately the cost of work done."

The complaint alleges that the defendant entered upon the lands in question and commenced the cutting of the pulp wood under the contract about the first of October, 1899, and notified the plaintiff that it was so doing; that it called upon the plaintiff to make advances under the terms of the contract, which it did in the aggregate sum of twenty-five thousand dollars; that notwithstanding the plaintiff so performed its contract, the defendant assumed to rescind the contract on the ground, as alleged in the answer, that the plaintiff was in default of its covenant to make necessary advances for work done.

The complaint also avers that following this attempted rescission, the defendant entered into a contract in writing with its co-defendant, the Brooklyn Cooperage Company, which is set forth in full, wherein it appears that the defendant has covenanted to convey to the Brooklyn Cooperage Company about one-half of the thirty-two thousand acres of land.

The complaint further avers that the total amount of wood pulp upon the thirty-two thousand acres subject to the contract in question does not exceed two hundred and forty thousand cords. In other words, this allegation implies that all the pulp wood on the premises is not more than sufficient to meet the demands of the contract if it covers a period of twenty years.

There is also an averment that the defendant has refused to deliver to plaintiff the pulp wood covered by these advances and upon which it has an express lien under the terms of the contract.

As a further ground of equitable relief, it is alleged that at the time the plaintiff entered into the contract it was but recently organized, and was then engaged and is now engaged in the construction of a large paper and pulp plant in Wilna, Jefferson county, which is being completed as rapidly as possible and involves an expenditure of about one million of dollars; and that the failure of the defendant to perform its contract works irreparable damage to the plaintiff.

It is further averred that since the execution of this contract the price of pulp wood has greatly advanced owing to the increasing scarcity of the timber from which it is cut.

From the situation of the parties as disclosed by the contract and the allegations of the complaint, which for the purpose of this appeal stand admitted, it is apparent that the plaintiff's remedy at law is inadequate. Any attempt to prove damages that might result to the plaintiff by the non-performance on the part of the defendant would encounter insuperable difficulties, as the contract extends over a term of ten years, and at the election of plaintiff may cover a period of ten years more.

The market price of pulp wood, the cost of transportation and the rate of wages, all essential in determining damages, would be unknown quantities in a problem involving so long a period. Furthermore, the contingencies contemplated by the contract, of the destruction in whole or in part of the timber by fire, or the taking of all or some portion of the land by the state in the exercise of the right of eminent domain, prevent an accurate computation of damages in the future.

The view we entertain of this case renders it unnecessary to decide at this time whether a court of equity should enforce the specific performance of this contract, or should confine the relief granted to the enforcement of its negative covenants.

The time over which a contract extends is not necessarily controlling as to specific performance. This court has decreed specific performance of a contract between railroad corporations extending over a period of twenty-one years. (*P. P. & C. I. R. R. Co.* v. *C. I. & B. R. R. Co.*, 144 N. Y. 152.)

In a late case we have refused to decree the specific performance of a contract, involving a period of only two years, on the ground that it required various and continuous acts and the exercise of such special skill, taste, judgment and supervision as to render judicial control extremely difficult, but confined the relief to the enforcement of the negative covenant which afforded some protection to the plaintiff. (*Standard Fashion Co.* v. *Siegel-Cooper Co.*, 157 N. Y. 60.)

The relief of plaintiffs by the enforcement of negative covenants is very common and has been extended to cases involving a contract for the sale of or interest in chattels. (*Donnell* v. *Bennett*, L. R. [22 Chan. Div.] 835; *Peabody* v. *Norfolk*, 98 Mass. 452; *Goddard* v. *Wilde*, 17 Fed. Repr. 845; *Equitable Gas Light Co.* v. *Baltimore Coal, Tar & Mfg. Co.*, 65 Md. 73.)

The plaintiff insists that it has fully performed the contract and asks for its specific performance and the usual relief in equity, while the defendant admits that it has attempted to rescind the contract on the ground of plaintiff's non-performance, has covenanted to convey to another corporation fully one-half of the premises in question, and in a general way proceeded in a manner as if the contract no longer existed.

We have here distinct issues that should have been tried by the Special Term, and the dismissal of the complaint under these circumstances was error.

The Appellate Division in affirming the judgment dismissing the complaint did so upon its opinion written on reversing the order granting an injunction restraining the defendant from conveying any portion of the land in question in violation of the terms of the contract during the pendency of the action. In that opinion it held, in substance, that in view of the difficulties involved in compelling obedience to its decree the specific performance of the contract would not be directed. It also held that as the plaintiff's ultimate success was doubtful, and the injury to the defendant which would follow the injunction would be greater than any possible injury which would result to the plaintiff from its denial, afforded an additional reason for denying the injunction *pendente lite*. (55 App. Div. 225.)

The questions of the propriety of granting the injunction *pendente lite* and of setting it aside on appeal are not before us, and we refrain from expressing any opinion in the premises.

After the issues have been tried and the precise facts in this case established, the trial judge will be in a position to determine whether the court will decree the specific perform-

ance of the contract and issue its injunction in aid thereof, or confine the relief to the enforcement of the negative covenants.

The trial of the issues will present to the judge presiding a different state of facts than were before the Special Term on the motion to dismiss the complaint on the pleadings, controlled, as it was, by the decision of the Appellate Division setting aside the injunction *pendente lite.*

Counsel suggested on the argument that the plaintiff's interest in the defendant's thirty-two thousand acres of wood lands is analogous to the legal estate of *profit a prendre.* The right of *profit a prendre* has been defined to be the right to take something which is the produce of the land, such as coal or mineral from the earth or seaweed from the shore. (Jones on Easements, §§ 49, 56, 57.)

The Court of Errors said in *Post* v. *Pearsall* (22 Wend. 425, 433) that this right " when not granted in favor of some dominant tenement cannot properly be said to be an easement, but an interest or estate in the land itself."

There is some conflict of authority as to the precise limits of the definition of *profit a prendre,* and while it may be true that the plaintiff's claim under this contract bears some analogy to the right suggested, we content ourselves with holding that the complaint states an equitable cause of action, and, read in connection with the contract, shows that the plaintiff has acquired certain rights in connection with the land in question that can only be definitely ascertained and defined after the trial of the issues presented by the pleadings.

The judgment appealed from should be reversed and a new trial ordered, with costs to the plaintiff in all the courts to abide the event.

Parker, Ch. J., Gray, O'Brien, Haight and Cullen, JJ., concur ; Vann, J., absent.

Judgment reversed, etc.