GEORGE A. Fox et al., Respondents, *v.* FRANK FITZPATRICK et al., Appellants, Impleaded with Another.

1. EQUITY — ACTION TO RESTRAIN BREACH OF CONTRACT — ADEQUATE REMEDY AT LAW. An equitable action to restrain the breach of a contract for the sale of trees, either standing or after they are cut into logs, will not lie unless the legal damages resulting from such breach are too uncertain and conjectural to constitute an adequate compensation.

2. SAME. The facts examined in such an action and *held*, that the primary rights of all the parties were legal and not equitable, and that the plaintiffs had an adequate remedy at law.

*Fox* v. *Fitzpatrick*, 113 App. Div. 892, reversed.

(Argued December 3, 1907; decided December 17, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered

May 25, 1906, affirming a judgment in favor of plaintiffs entered upon the report of a referee.

The case made by the complaint was in equity and the only specific relief demanded was for an injunction restraining the defendants from violating a certain contract. The allegation of the plaintiffs that they had no adequate remedy at law was denied by the defendants Fitzpatrick, Weller and Ball, who did not, however, plead as an affirmative defense that the plaintiffs' had such a remedy. At the trial the point was raised by a motion to dismiss both at the close of the evidence for the plaintiffs and at the close of the entire evidence. No question was raised as to misjoinder of parties plaintiff by demurrer or otherwise.

The referee to whom the action was referred found the following facts in substance: On the 9th of September, 1902, the plaintiff Fox owned a farm near the village of Ellicottville in this state upon which a large number of maple and some basswood trees were standing. On that day he entered into a contract with the defendant Ball of which the material part is as follows, viz. : "Party of the first part (Fox) agrees to sell all the maple and basswood timber that is suitable for making last blocks for $4.00 per thousand feet now on his farm to party of the second part (Ball). Party of the second part (Ball) agrees to cut and deliver all of said timber within one year from this date to Fitzpatrick & Weller mill and leave $4.00 per M. to the cr. of George Fox."

When this contract was executed the defendants Fitzpatrick and Weller were copartners engaged in the manufacture of last blocks in Ellicottville, and the plaintiffs Murphy, Hickey and McMahon were also copartners carrying on a like business in the same place under the firm name of "The Ellicottville Milling Company."

Before anything had been done by the defendant Ball toward performing his agreement with Fox, he formed a partnership with the defendant Sherman on such terms that each partner was "to have a joint and common interest in the execution" of said contract.

On the 29th of September, 1902, Ball and Sherman asked Fox to consent to a modification of the contract of September ninth so as to allow them to deliver the logs to the Ellicottville Milling Company provided they could get a better price therefor.   Fox consented and thereafter, but on the same day, Ball and Sherman agreed with said milling company to deliver the logs to it, at $9.50 per thousand feet.   On the same day the milling company advanced to Fox the sum of $50 on " said contract," and on the day following some of the logs were delivered at its mill.   Afterward, but at about the same time, Ball without the knowledge or consent of either Sherman or Fox assigned all his interest in the contract of September ninth to Fitzpatrick and Weller in consideration of $15.00 and an agreement on their part to employ him by the day in cutting and hauling said timber to their mill.   No provision was made for the measurement of the logs except as they might be measured by Fitzpatrick and Weller, who knew when they took the assignment that the Ellicottville Milling Company had already contracted for the logs.   In a short time Fitzpatrick and Weller began cutting and removing the logs to their mill, and were thus engaged when this action was commenced on the 13th of October, 1902.   Sherman and Ball were insolvent and the plaintiffs upon the trial waived all claims to damages for the timber cut by Fitzpatrick and Weller.

After finding these facts the referee found as conclusions of law that the contract of September 29th with the Ellicottville Milling Company was valid and binding, and transferred an interest " in said timber to the Ellicottville Milling Company," and that the subsequent assignment by Ball of his interest in his contract with Fox transferred no title to Fitzpatrick and Weller as against the interest of the Ellicottville Milling Company and the plaintiff Fox.   The referee also found that the plaintiffs were entitled to a permanent injunction restraining the defendants Fitzpatrick and Weller from cutting and removing said timber, and the defendants Ball and Sherman from delivering the same except to the Ellicottville Milling Company.

The defendants Fitzpatrick, Weller and Ball filed exceptions to some of the findings of fact and to all of the conclusions of law. The Appellate Division affirmed the judgment entered upon the report of the referee, one of the justices not voting, and the defendants, with the exception of Mr. Sherman, who had not answered, appealed to this court.

*Henry P. Nevins* and *Thomas H. Dowd* for appellants. The plaintiffs have not established sufficient facts to entitle them to the equitable relief demanded in the complaint and awarded in the judgment. (Pom. Eq. Juris. § 1405; *Stokes* v. *Stokes,* 148 N. Y. 708; *Johnson* v. *Brooks,* 93 N. Y. 337; *Hammond* v. *Morgan,* 101 N. Y. 179.) The plaintiffs Mc-Mahon, Hichey and Murphy, composing the Ellicottville Milling Company, cannot maintain this action. (*Greene* v. *Armstrong,* 1 Den. 550; *McGregor* v. *Brown,* 10 N. Y. 114; *Killmore* v. *Howlett,* 48 N. Y. 569.) The plaintiff Fox cannot maintain this action. (*Mott* v. *Richtmyer,* 57 N. Y. 49; *J. B. College* v. *Allen,* 172 N. Y. 291; *Brown* v. *Britton,* 41 App. Div. 57; *Morgan* v. *City of Binghamton,* 102 N. Y. 500; *Genet* v. *D. & H. C. Co.,* 122 N. Y. 505; *People* v. *Canal Board,* 55 N. Y. 390.) The plaintiffs had an adequate remedy at law if they suffered any injury. They have no remedy in equity supported by the findings of fact in this case. (Pom. Eq. Juris. § 177; *Hammond* v. *Morgan,* 101 N. Y. 179; *Wilber* v. *Wilber,* 83 Hun, 203; *Hawes* v. *Dobbs,* 137 N. Y. 465; *Dudley* v. *Congregation,* 138 N. Y. 451; *Clements* v. *Sherwood-Dun,* 108 App. Div. 327; *Butler* v. *Wright,* 103 App. Div. 463; *Dalton* v. *Vandeview,* 21 Abb. N. C. 43; *Skilton* v. *Payne,* 76 N. Y. S. R. 111; *Ketchum* v. *Depew,* 81 Hun, 278.) The plaintiffs could in no way be injured by the acts they seek to enjoin. (*Brown* v. *Britton,* 41 App. Div. 57; *Wormser* v. *Brown,* 149 N. Y. 163; *Garvey* v. *L. I. R. R. Co.,* 159 N. Y. 323.)

*William G. Laidlaw* and *A. M. Laidlaw* for respondents. No writing was necessary to enable Ball to take in Sherman as

partner, or as one jointly interested with himself in the execution of the Fox contract of September 9, 1902. (*Ostrander* v. *Snyder*, 73 Hun, 379; *Babcock* v. *Reed*, 98 N. Y. 609.) It was within the power of Ball and Sherman on the one hand and Fox on the other to modify the contract of September 9, 1902, and change the destination of the logs from Fitzpatrick & Weller's mill to the mill of the Ellicottville Milling Company, and although the contract was in writing, it could be changed in this respect by parol. (*Solomon* v. *Vallette*, 152 N. Y. 151.) The contract of September 29, 1902, by which Ball and Sherman agreed to cut and deliver the logs to the Ellicottville Milling Company at nine dollars and fifty cents per 1,000 feet was a valid, binding contract, although by parol. (*Killmore* v. *Howlett*, 48 N. Y. 569.) Under the contract of September 9, 1902, Ball got no title to the logs. (*Johnson* v. *Brooks*, 93 N. Y. 337; *Butler* v. *Wright*, 103 App. Div. 496; Pom. Eq. Juris. § 1402; *S. R. P. Co.* v. *S. C. L. Co.*, 173 N. Y. 149; 55 App. Div. 225.) In actions for specific performance courts often give relief by injunction restraining the commission of acts which are expressly or impliedly forbidden by the contract between the parties of which specific performance is sought; this happens in cases where it would not be practicable for the court to enforce the performance of the whole contract affirmatively. (*S. F. Co.* v. *Siegel-Cooper Co.*, 157 N. Y. 60; *Hayes* v. *Willis*, 11 Abb. Pr. [N. S.] 167; *S. R. P. Co.* v. *S. C. L. Co.*, 173 N. Y. 161.)

Vann, J.   The important question on this appeal is whether the facts found by the referee support his conclusions of law. The action is clearly in equity and the concrete question is whether according to the facts found a court of equity had jurisdiction. There are five periods in the progress of the negotiations between the various parties when rights are alleged to have accrued and it will be convenient to examine the rights and relations of the parties at each of these periods.

1. When the written contract was made between Fox and Ball, title to the trees did not pass to the latter, for he was

first to cut and deliver the logs and leave $4.00 a thousand with the firm of Fitzpatrick & Weller to the credit of Fox. The entire consideration on the part of Ball was to cut and deliver the trees and pay for them in the manner specified on delivery at the place named. Under these circumstances title to the trees, even after they had been converted into logs, did not pass to Ball until by such delivery and deposit he had fully performed his part of the contract. The agreement by Fox was to sell and by Ball to cut, deliver and deposit, and the sale was not complete until delivery and payment had been made.

2. The arrangement between Ball and Sherman was not a sale by the former to the latter of an interest in the contract for the trees, but was a copartnership agreement verbally made by which Sherman was given a one-half interest in the execution of that contract. Ball still owned it and Sherman simply had an interest in the profits to be derived from carrying it out.

3. Fox orally agreed with Ball and Sherman that his contract with Ball should be so modified as to permit delivery of the logs to the Ellicottville Milling Company instead of to Fitzpatrick & Weller. If this modification was invalid because not in writing further discussion is unnecessary, for on that basis it is obvious that the plaintiffs have no cause of action against the defendants either in equity or at law. Personally I am of the opinion that the modification does not come within the requirements of the Statute of Frauds because the change made did not operate on the trees while standing and could have no effect until after they had been cut into logs and thus converted into personal property. (*Killmore* v. *Howlett*, 48 N. Y. 569, 570.) Without so deciding, I shall assume that this is the law for the purpose of further discussion.

4. Ball and Sherman agreed to deliver the logs to the Ellicottville Milling Company at $9.50 per thousand. The milling company advanced to Fox the sum of fifty dollars, and on

the next day some of the logs were delivered to it in accordance with the agreement.

Ball and Sherman did not assume to assign the original contract with Fox, which still belonged to Ball, but they agreed to sell to the milling company the logs when cut at $9.50 per thousand. There was part performance by Ball and Sherman through delivery of some of the logs and part payment by the milling company through the advance of fifty dollars to Fox, presumptively with the consent of Ball and Sherman. This was a valid contract which placed Ball and Sherman under obligation to deliver the logs as they were cut to the Ellicottville Milling Company, which, however, acquired no title to the trees when uncut, nor to any logs except as they were delivered at their mill.

5. Finally, Ball assigned his contract with Fox to Fitzpatrick & Weller. He had a right to assign it, for there was no agreement that he should not; but as Fitzpatrick & Weller knew of Ball and Sherman's contract with the Ellicottville Milling Company, they took it subject thereto. Even if they had a right to go on Fox's land and cut the trees, they had no right to deliver the logs at their own mill, because they knew there was a valid contract outstanding for the delivery thereof to the Ellicottville Milling Company as fast as they were cut. Their rights were subordinate to those created by the previous contracts of which they had full notice.

Ball and Sherman were insolvent, so that a right of action against them was of no value, but both the milling companies were solvent. The referee failed to find that the plaintiff Fox, or his co-plaintiffs composing the Ellicottville Milling Company, or both together, had no adequate remedy at law, or that they would be irreparably injured by the performance of the acts which they sought to enjoin, or that the damages they would sustain would be difficult to prove. Furthermore, we find no evidence in the record to warrant such a finding, so that none can be implied in support of the judgment.

A party cannot be deprived of his right to a trial by jury,

nor subjected to the stringent methods frequently employed to enforce judgments rendered by courts of equity, unless the facts conferring equitable jurisdiction are alleged, proved and found. In this case such facts, even if sufficiently alleged, were neither proved nor found. If Ball and Sherman violated their contract with the Ellicottville Milling Company, that fact gave the latter no cause of action against Fox, so that he needed no injunction to protect him in that regard. Nor could he be injured by delivery of the logs to the solvent party to whom he had originally provided they should be delivered and at the same place where he at first agreed that delivery should be made. All he was entitled to in any event was the sum of four dollars per thousand on delivery, and this he could recover as well of the original as of the substituted party to whom delivery was to be made. The claim that he might not get a fair measurement by Fitzpatrick & Weller is answered by the fact that they were the persons who, as he had once agreed, were to do the measuring, and by the undisputed evidence that before the commencement of the action they told him he might select any person he chose to do that work at their expense. His remedy at law was ample and he did not show himself entitled to equitable relief.

The same is true of the other plaintiffs. Maple and basswood logs are not a peculiar but a common kind of property which the Ellicottville Milling Company could have procured in the open market, and, so far as the evidence shows, without paying more than they had agreed to pay Ball and Sherman. Even if they had to pay more they could recover the difference of Fitzpatrick & Weller. All damages that they sustained from any wrongful act of that firm they could recover from it in an action at law properly brought. It is suggested that other legal remedies were open, but we need not discuss them, for from no point of view as we regard the facts found, or such as could reasonably be found from the evidence, did the plaintiffs, either together or separately, have a cause of action in equity against the defendants. The primary rights of all the parties were legal, not equitable,

and the legal remedies were adequate to do complete justice. The equitable remedy of injunction by judgment, as distinguished from an injunction by order *pendente lite*, depends upon the incompleteness and inadequacy of the legal remedy. If issued to restrain the breach of a contract it is " a negative specific enforcement of that contract " and jurisdiction does not attach unless " the contract is one of a class which will be affirmatively specifically enforced." (Pomeroy's Eq. Jur. [3d ed.] § 1341.) " Equity will not, in general, decree the specific performance of contracts concerning chattels, because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality." (Id. § 1402.) None of the exceptions to this general rule mentioned by the learned author cover specifically or in principle a contract for the sale of trees either when standing or after they are cut into logs, unless the legal damages are " too uncertain and conjectural to constitute an adequate compensation."

No trust or fiduciary relation existed in reference to the logs and, aside from other radical distinctions, there was no negative covenant to be enforced as there was in *St. Regis Paper Co.* v. *Santa Clara Lumber Co.* (173 N. Y. 149), upon which the plaintiffs rely.

We think that the plaintiffs failed to show themselves entitled to equitable relief of any character and that the facts found by the referee do not support his conclusions of law.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Cullen, Ch. J., O'Brien, Edward T. Bartlett, Hiscock and Chase, JJ., concur; Haight, J., dissents.

Judgment reversed, etc.