[No. 21509.   Department One.   April 22, 1929.]

EARL CORWIN, *Appellant*, v. GRAYS HARBOR WASHING-
TONIAN, INCORPORATED, *Respondent.*[1]

[1]Reported in 276 Pac. 902.

*F. L. Morgan,* for appellant.

*James P. H. Callahan,* for respondent.

BEALS, J.—Plaintiff, being the owner of all of the capital stock of K. X. R. O., Inc., a corporation, signed a writing in the following form:

"100.00                                          August 13, 1927.

"Received from Grays Harbor Washingtonian, Inc., $100 as earnest money on purchase of entire capital stock of K. X. R. O., Inc., a Washington corporation. The entire price is $1,625, balance thereof to be paid in cash upon closing of deal. I agree to pay all debts and liabilities of said corporation to date of closing deal, except claims of Jones and Jones not exceeding $1,930.94, for building and furnishing studio in Aberdeen, but I agree to pay rent to date of closing this deal, this to be closed in the office of J. P. H. Callahan, Hoquiam, Wn., on Thursday, Aug. 25, 1927, 9:00 A. M. This purchase includes all corporate records, stock book, files and correspondence and everything belonging to corporation, especially including radio licenses.

"Earl Corwin,
"for K. X. R. O. Inc."

Upon which defendant endorsed:

"The above agreed to and we will pay Earl Corwin $20 to cover his expenses of trip to Hoquiam to close deal.         Grays Harbor Washingtonian, Inc.,
"By Albert Johnson, President."

The time for closing the deal having been extended at defendant's request, defendant, September 9, 1927, notified the plaintiff that it declined to complete the purchase. Shortly thereafter, plaintiff made formal tender to defendant of the corporate stock, together with the corporate books and records, which tender was not accepted. Plaintiff thereupon brought suit, alleging the facts above set forth and that, by reason thereof, defendant was indebted to plaintiff in the sum

of $1,545, for which amount, together with his costs, plaintiff prayed for judgment against defendant.

To this complaint, defendant interposed a general demurrer, and upon the same being overruled, filed its answer denying any indebtedness to plaintiff and setting forth two affirmative defenses, to which plaintiff replied. Upon the action being called for trial, there was some discussion between the court and counsel for the respective parties as to whether or not the complaint stated a cause of action, the court finally stating,

"My impression at this time is that this complaint is demurrable, but I will hear the evidence and permit the pleadings to be amended in accordance with the testimony. It is for the purpose of making a complete record in this case."

Plaintiff having rested his case, defendant moved for a nonsuit upon the ground that the complaint failed to state a cause of action, and that plaintiff's testimony did not warrant any recovery in his favor. The court granted this motion, and entered judgment dismissing the action, from which plaintiff appeals.

Appellant contends that his complaint alleged, and his evidence proved, a sale of the corporate stock referred to in the memorandum above quoted, and that, under the circumstances as shown, he is entitled to maintain an action against respondent for the balance of the purchase price of the stock, that being his measure of recovery upon breach of the agreement by respondent. Respondent contends that appellant's remedy, if any, is an action for damages for breach of contract, and not an action for the full balance of the purchase price. Appellant introduced no testimony on the question of damages, relying upon his contention that he was entitled to recover judgment against respondent for the balance of the purchase price.

Appellant contends that the agreement between the parties evidences a completed sale of the stock at the time of the payment of the earnest money. We are unable to agree with this contention. Appellant agreed to pay all the debts and liabilities of the corporation, with one stated exception, and to pay rent to the date of closing the deal. The agreement between the parties was, on its face, an executory contract and not an absolute sale, and title to the stock was not to pass to respondent until payment of the balance of the purchase price. There was no delivery of the stock to respondent and, under the circumstances, the general rule applies, that, in cases where the transaction contemplates or provides for a future delivery of the subject-matter thereof, it will ordinarily be deemed an executory contract of sale. 23 R. C. L., Title "Sales," § 170-1; *Pacific Coast Elev. Co. v. Bravinder,* 14 Wash. 315, 44 Pac. 544; *Adams v. Ames,* 19 Wash. 425, 53 Pac. 546; *Robinson v. Thoma,* 30 Wash. 129, 70 Pac. 240.

Appellant relies upon paragraphs (2) and (3) of § 63, ch. 142, Laws of 1925, Ex. Ses., p. 383; Rem. 1927 Sup., § 5836-63, which read as follows:

"(2) Where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price, although the property in the goods has not passed, and the goods have not been appropriated to the contract. But it shall be a defense to such an action that the seller at any time before judgment in such action has manifested an inability to perform the contract or the sale on his part or an intention not to perform it."

"(3) Although the property in the goods has not passed, if they can not readily be resold for a reasonable price, and if the provisions of section 64 (4) are not applicable, the seller may offer to deliver the goods

to the buyer, and, if the buyer refuses to receive them, may notify the buyer that the goods are thereafter held by the seller as bailee for the buyer. Thereafter the seller may treat the goods as the buyer's and may maintain an action for the price."

Paragraph (4) of § 64 (Rem. 1927 Sup., § 5836-64) of the "Uniform Sales Act," referred to in par. (3), § 63, *supra,* reads as follows:

"(4) If while labor or expense of material amount are necessary on the part of the seller to enable him to fulfil his obligations under the contract to sell or the sale, the buyer repudiates the contract or the sale, or notifies the seller to proceed no further therewith, the buyer shall be liable to the seller for no greater damages than the seller would have suffered if he did nothing toward carrying out the contract or the sale after receiving notice of the buyer's repudiation or countermand. The profit the seller would have made if the contract or the sale had been fully performed shall be considered in estimating such damages."

Paragraph (2), *supra,* is not controlling, because we hold that, under the contract between the parties, the balance of the purchase price was not "payable on a day certain irrespective of delivery or of transfer of title;" the balance of the purchase price in the case at bar being payable only upon performance of appellant's agreement by him and delivery of and transfer of title to the corporate stock.

We are satisfied that personal property such as the shares of stock which appellant agreed to sell to respondent comes within the provisions of § 63, par. (3), above quoted, in that it is such property as cannot readily be resold for a reasonable price. Appellant having offered to deliver the stock to respondent, and respondent having refused to accept the same, appellant is in a position to claim the benefit of § 63, par. (3) unless the provisions of § 64, par. (4), *supra,* are applicable. In the contract between the parties,

appellant agreed to pay all debts and liabilities of the corporation to the date of closing the deal, except one claim specifically excepted, and to pay the rent to the date of closing the transaction. The agreement is dated August 13, 1927, and according to its terms, the deal was to be closed August 25 following. While the contract according to its terms is executory, it nowhere appears from the record before us that there were any debts or liabilities of the corporation except the claim referred to, which appellant was not to pay, or that the rent up to August 25 had not already been paid. The extension of time within which respondent could close the deal was granted at respondent's request, and it does not appear that this extension obligated appellant to pay any further rent. Respondent repudiated the purchase under date September 9, 1927, and appellant made his tender September 19, 1927. It is evident that § 64, par. (4) of the Uniform Sales Act, above quoted, was intended primarily to refer to contracts for the purchase of personal property requiring the expenditure of labor thereon, or the purchase of material by the seller in order to make or complete the article ordered for delivery.

Assuming, for the sake of argument, that the paragraph referred to would be held to apply to such a contract as this, in which the seller agrees to disburse money in payment of indebtedness against the corporation the capital stock of which he agrees to sell, in the record before us we are unable to find anything which brings this case within the provisions of the paragraph last referred to. No testimony was introduced as to the payment of any corporate debts by appellant after September 9, the date of the repudiation of the contract by respondent, and we cannot assume that any such payments were made by appellant. The purpose of § 64, par. (4) is plain. It provides for

minimizing damages by allowing the purchaser to stop the progress of work and the expenditure of money which is being done pursuant to his order, and thereby prevents the accrual of further damage for which he may be responsible. Nothing in the record before us brings this case within the purview of this paragraph.

Many courts have held that an action for the contract price may be brought by the seller based on a contract for the sale of shares of corporate stock, if it appears that such stock is not for sale on the general market and is of uncertain value; it being the theory of these cases that the ordinary rules governing actions for damages by the seller for breach of a contract for the sale of personal property do not apply to such a case. *Morgan v. Bartlett,* 75 W. Va. 293, 83 S. E. 1001, L. R. A. 1915D 300; *Smurr v. Kamen,* 301 Ill. 179, 133 N. E. 715, 22 A. L. R. 1023 (and note 1032); 14 C. J. 706 and 716.

The corporate stock which appellant agreed to sell to respondent, in our opinion, clearly comes within the rule laid down by the foregoing authorities, as it was not a stock which had ever been offered for sale on the open market, and it was of uncertain value. The foregoing authorities should be considered in construing the "Uniform Sales Act" of 1925, and we hold that the shares of stock which were the subject-matter of the contract between the parties to this action constituted property which could not "readily be sold for a reasonable price;" and falls within the provisions of § 63, par. (3), above set forth. We further hold that par. (4) of § 64, *supra,* is not applicable to the facts disclosed by the record now before us and that there was evidence before the trial court upon which, the same being uncontroverted, appellant was entitled to judgment. The trial court therefore erred in granting respondent's motion for a nonsuit.

The judgment appealed from is reversed, and the cause remanded with directions to overrule the motion for a nonsuit and proceed with the trial.

MITCHELL, C. J., TOLMAN, and HOLCOMB, JJ., concur.